[Civ. No. 46774. Second Dist., Div. One. Sept. 30, 1976.]

In re PAMELA DUNLAP, a Minor.
MARY LOUISE CRENSHAW, Plaintiff and Appellant, v.
JUANITA DUNLAP, Defendant and Respondent;
PAMELA DUNLAP, a Minor, Appellant.

430

## COUNSEL

William R. Freeman for Plaintiff and Appellant.

Anthony A. Pellegrini, under appointment by the Court of Appeal, for Appellant.

Thomas Jed Scully, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**THOMPSON, J.**—These appeals by a child and a foster parent from an order denying a petition to declare a child free from parental custody and control raise the issue of apparent first impression[1] of the extent of the child's constitutional and statutory right to independent counsel in the proceeding. It concerns, also, issues of: (1) the authority of a commissioner to hear the matter in the absence of a stipulation on behalf of the child; (2) the sufficiency of evidence to support a trial court conclusion that the child was not abandoned by her natural mother within the meaning of Civil Code section 232, subdivision (a)(1); (3) the propriety of trial court action limiting its consideration to the abandonment provisions of Civil Code section 232 to the exclusion of subdivision (a)(7) of that section; (4) whether the trial court complied with Civil Code section 232.5 by considering the best interests of the child in making its order; and (5) whether the trial court improperly failed to consider the wishes of a child four years of age in reaching its conclusion.

We conclude as to the child's right to counsel that: (1) Civil Code section 237.5 vests the trial court with discretion to appoint counsel to represent the child in a proceeding to declare the child free of parental custody and control; (2) there must be a basis in fact supporting the manner in which the discretion is exercised; (3) the statutory scheme persuades that the burden is upon the establishment of reasons why

---

[1]A number of cases have dealt with action removing a child from parental custody where the child was unrepresented, but none discuss the child's right to counsel. (See e.g. the following sampling cases decided after the original enactment of Civ. Code. § 237.5 in 1965: *In re Rodriguez* (1973) 34 Cal.App.3d 510 [110 Cal.Rptr. 56]; *Crespo v. Superior Court* (1974) 41 Cal.App.3d 115 [115 Cal.Rptr. 681]; *In re Norma M.* (1975) 53 Cal.App.3d 344 [125 Cal.Rptr. 721]; *In re Helen J.* (1973) 31 Cal.App.3d 238 [107 Cal.Rptr. 106]; *Adoption of Hinman* (1971) 17 Cal.App.3d 211 [94 Cal.Rptr. 487]; *In re Miller* (1966) 244 Cal.App.2d 454 [53 Cal.Rptr. 211]; *In re T. M. R.* (1974) 41 Cal.App.3d 694 [116 Cal.Rptr. 292]; *In re Sherman M.* (1974) 39 Cal.App.3d 40 [113 Cal.Rptr. 847]; *Adoption of Oukes* (1971) 14 Cal.App.3d 459 [92 Cal.Rptr. 390]; *In re Eugene W.* (1972) 29 Cal.App.3d 623 [105 Cal.Rptr. 736]; *In re Susan M.* (1975) 53 Cal.App.3d 300 [125 Cal.Rptr. 707]; *In re D. L. C.* (1976) 54 Cal.App.3d 840 [126 Cal.Rptr. 863]; *In re Lisa R.* (1975) 13 Cal.3d 636 [119 Cal.Rptr. 475, 532 P.2d 123], cert. den. 421 U.S. 1014 [44 L.Ed.2d 682, 95 S.Ct. 2421]; *In re Morrow* (1970) 9 Cal.App.3d 39 [88 Cal.Rptr. 142], overruled on other grounds at 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349]; *In re Neal* (1968) 265 Cal.App.2d 482 [71 Cal.Rptr. 300]; *Adoption of R. R. R.* (1971) 18 Cal.App.3d 973 [96 Cal.Rptr. 308].)

counsel should *not* be appointed so that absent a showing of a factual predicate to the contrary the court must appoint independent counsel for the child; and (4) here the record does not establish the requisite predicate. Accordingly, we reverse the order of the trial court for failure to appoint counsel to represent the child at the hearing on the petition. We do not, therefore, reach the issue of the constitutional right of the child to independent counsel. We dispose of other issues raised on this appeal summarily.

*Facts*

Understanding of the issue of the minor's right to counsel in the context of the case at bench requires a detailed statement of facts so that the flavor of the litigation is revealed.

Pamela is the 14th child of Juanita Dunlap who was a 43-year-old widow at the time of Pamela's birth in June of 1971. The birth certificate shows that Mrs. Dunlap refused to name the father of the child. Mrs. Dunlap voluntarily relinquished Pamela for temporary placement in a foster home through the Los Angeles Department of Social Services (DPSS). Her reasons for the action were that she then had "about nine" children living at home, that she was under a strain and could not take care of Pamela, and a fear that Pamela would not be accepted by her other children.

At the age of three weeks, Pamela was delivered by DPSS directly from the hospital to the home of Mary Louis Crenshaw, a foster parent qualified with DPSS. Mrs. Crenshaw was informed that the placement was temporary, and Mrs. Dunlap was told that, upon her request, Pamela would be returned to her. Mrs. Dunlap executed the necessary documents so that aid to dependent children could be paid to Mrs. Crenshaw for Pamela's benefit.

In February of 1972, about eight months after the initial placement, Mrs. Crenshaw told DPSS that she wished to adopt Pamela. The request was communicated to DPSS and the possibility of adoption was discussed with Mrs. Dunlap who refused to consent to it. The matter was dropped. In March of 1973, Mrs. Dunlap told a DPSS social worker assigned to her that she wished Pamela returned. The social worker suggested that Mrs. Dunlap make plans to become more intimately acquainted with Pamela in order to effectuate her return. The social

worker concluded that Mrs. Dunlap was "ambivalent" about the return of her child and had failed to visit her sufficiently or otherwise to plan for her return. Pamela remained with Mrs. Crenshaw. A different social worker was assigned to the matter. The second social worker shared the views of the first because of difficulty in counseling Mrs. Dunlap. Both social workers reached their conclusion of Mrs. Dunlap's ambivalence primarily because Mrs. Dunlap accepted without complaint their own inaction on her request to return her daughter.

By late 1973, the matter of Mrs. Dunlap and Pamela became part of the case load of still a third social worker, Jules Gabay. By then Mrs. Dunlap evidenced her displeasure at inaction upon her request for the return of Pamela by refusing to execute the forms required to authorize aid to dependent children allocable to Pamela to be paid to Mrs. Crenshaw. When Gabay explained that her signature on the forms did not represent her consent to relinquish Pamela, Mrs. Dunlap signed them.

In May of 1974, Mrs. Dunlap asked Gabay to secure Pamela's return to her. Acting pursuant to a DPSS policy encouraging, but not requiring, the practice as a prerequisite to a return of a child placed with foster parents to the natural parent, Gabay told Mrs. Dunlap to begin visiting Pamela on a regular basis. He tentatively scheduled Pamela's return for July of 1974. Between March and July, Gabay contacted Mrs. Crenshaw informing her that Pamela was to be returned to the natural mother. Mrs. Crenshaw became very upset and pleaded with Gabay to leave Pamela with her. Gabay let July pass without taking action. The sporadic nature of DPSS action on Mrs. Dunlap's requests for return of Pamela and a failure of social workers to counsel Mrs. Dunlap was due to an excessive case load of 40 active cases per social worker, a primary attention to abusive, alcoholic, or mentally disturbed parents, categories in which Mrs. Dunlap did not fit, and Mrs. Dunlap's own apparent resignation to the delay in action on her request. DPSS's knowledge that Pamela was well cared for in Mrs. Crenshaw's home contributed to the agency's inaction.

In the latter part of 1974, Mrs. Crenshaw talked with Mrs. Dunlap telling her of her love for Pamela and her desire to keep her. Mrs. Dunlap related the conversation to Gabay. It was Gabay's "impression" that Mrs. Dunlap was not going to pursue the matter of Pamela's return. After the conversation with Mrs. Crenshaw, Mrs. Dunlap received

threatening phone calls and her home was fire-bombed. The threats dissuaded Mrs. Dunlap from active contact with her daughter.

In October of 1974, Mrs. Dunlap insisted on Pamela's return. Gabay informed Mrs. Crenshaw that he would call for Pamela on October 28. On that date, he went to the Crenshaw home. Because Mrs. Crenshaw was very upset over the matter, Gabay agreed to delay the return of Pamela one day to permit Mrs. Crenshaw the additional time to prepare herself and the child for the transition. When Gabay appeared at the Crenshaw home the next day, accompanied by Mrs. Dunlap, neither Mrs. Crenshaw nor Pamela was there.

An attempt by Gabay to secure the return of Pamela to her natural mother in November of 1974 also proved fruitless. In December, Mrs. Crenshaw employed counsel. As a prelude to adoption, she filed a petition to declare Pamela free of parental control, thus commencing the case at bench. The petition is captioned and declared to be one pursuant to Civil Code section 232 without specification of a subsection. Its only charging allegation, however, is in terms of subdivision (a)(1) and declares that Pamela was left in the care of Mrs. Crenshaw without provision for her support by Mrs. Dunlap, Pamela's parent, and without communication from the parent, with intent on the part of the parent "to abandon the minor child continuously since June 30, 1971."

Pursuant to Civil Code section 233, a probation report was ordered by the trial court. The report states that Pamela is a very healthy and happy child residing with Mrs. Crenshaw in a home being purchased by the foster parent. "The home, though somewhat small, appears adequate and is very well maintained." Interviewed by the probation officer, "Pamela state[d] that she loves her mommy (referring to Mrs. Crenshaw) and does not want to leave her." The report discloses that Mrs. Crenshaw is a widow with three children born to her marriage and a fourth born after the death of her husband during a still-continuing relationship with John White, referred to by Pamela and the other children as "daddy." Mrs. Crenshaw's sources of support are social security benefits of $568.40 per month, $131 per month received for the support of Pamela, and $100 per month contributed by White for the support of his child. The report notes that Mrs. Crenshaw and her children are law-abiding, church-going, and well respected by Mrs. Crenshaw's neighbors and associates.

The probation report describes Mrs. Dunlap as married in 1945, widowed in 1968, and not remarried. Mrs. Dunlap has thirteen children in

addition to Pamela, six of whom then resided with her in a two-bedroom rented house. The house is "rather overcrowded and the housekeeping standards could be improved." The family's sole means of support is a social security benefit of $468 per month. Various of Mrs. Dunlap's children had "police contacts" and one spent some time in juvenile camp.

The report summarizes the situation. "Pamela Dunlap has been left in [Mrs. Crenshaw's] home since she was three weeks old. Over the period of three and a half years since that time, she has been thoroughly and completely accepted by and incorporated into the family unit. [¶] Pamela is a very healthy, happy, and heart-winning child. She evidences signs of a great deal of emotional and physical care. In observing this youngster it becomes quite obvious that she has enjoyed a great deal of love. [¶] There is nothing to suggest that [Mrs. Crenshaw] has been or is likely to be any kind of negative force in the minor's life. [Mrs. Crenshaw's] rearing of her own children suggests that if Pamela continues to receive the attention that she now receives, she will grow up to be quite a wholesome person. [Mrs. Crenshaw] and her children are reportedly church oriented and have created no problems in the school or neighborhood setting. [¶] Given the proper emotional support, Pamela in all probability could adjust to another family setting. However, the natural mother has shown little more than lack-luster concern and it is questionable that Pamela's being returned to her would be any less than traumatic with enduring effect on the minor. [¶] In addition, the natural mother's home is already overcrowded and there is some evidence that she has her hands full rearing and trying to keep the children that she already has in the home out of trouble. Pamela does not need to be thrust into that kind of situation."

The probation report concludes with the recommendation that Mrs. Crenshaw's petition be granted.

On February 19, 1975, the trial court appointed counsel to represent Mrs. Dunlap and set hearing on Mrs. Crenshaw's petition for April 10. Counsel was not appointed to represent Pamela. Counsel for Mrs. Dunlap and Mrs. Crenshaw stipulated that a commissioner might hear the matter as a judge pro tempore. Pamela, not being represented, did not participate in the stipulation.

At the beginning of the hearing, Deputy County Counsel Kenneth Briggs was present to represent a witness from DPSS with respect to action to quash a subpena duces tecum. When asked by the court if he intended to participate in the hearing, Briggs replied, ". . . it is my position that the child does not appear to need the assistance of counsel . . . . The interests of the child . . . are being represented either by the natural mother's attorney or the prospective adoptive parent's attorney. However, if the Court did find that the child needed representation, I would ask private counsel be appointed for the attorney [*sic*]. . . . County Counsel is not authorized to have such practice . . . . Further, I believe I have a tenuous position here, namely, the child was placed with the Department of Public Social Services by the mother. To date [DPSS] is still maintaining services for that child; and as counsel for [DPSS] I would ask to be present in its behalf and the child in that regard be present [*sic*]."

Counsel for the natural mother objected to Briggs' participation in the capacity which Briggs had stated unless DPSS was a party to the proceeding. After an off-the-record conference, the trial court recited for the record: "As I understand your statement, Mr. Briggs, it is merely an amicus position; you merely want to be present without participating as a necessary or even conditionally necessary party . . . ." Briggs agreed with the characterization of his position, and the objection to his participation was withdrawn. During the second day of the hearing, Briggs character-ized his position as "amicus curiae for the child's interest." Later the same day, the court stated that Briggs was sitting at counsel table "in a sort of amicus capacity."

Generally, when he participated in the proceedings, Briggs supported the position of the foster mother. He presented a closing argument to the effect that Mrs. Crenshaw's petition should be granted.

The record does not disclose that the commissioner read or considered the probation report. It was not offered in evidence. Testimony at the hearing was sharply conflicting. Mrs. Dunlap testified that she frequently visited Pamela while Mrs. Crenshaw denied visits other than a few which were infrequent and sporadic. The evidence establishes, however, that Mrs. Dunlap did not observe Pamela's birthdays or attempt to spend holidays with her daughter. Mrs. Dunlap stated that she did not intend to abandon Pamela.

The trial court found that the natural mother had not intended to abandon Pamela. It denied Mrs. Crenshaw's petition to declare Pamela free of parental control and ordered Pamela delivered to Mrs. Dunlap "forthwith."

Mrs. Crenshaw moved the trial court to stay enforcement of its order. The motion was heard by a judge rather than the commissioner. The judge denied the motion except for 15 days to permit Mrs. Crenshaw to seek a writ of supersedeas should she decide to appeal. The judge, having first discussed with Briggs the latter's position in the matter, found that the minor was without representation of counsel "and is in need of counsel." Accordingly, the judge appointed an attorney to represent Pamela in further proceedings. Mrs. Crenshaw filed her notice of appeal and sought a writ of supersedeas from this court. Mindful of the harm to the child that would result if she were placed with her natural mother and the order of placement subsequently reversed on appeal because of the difficult issue of the minor's right to counsel at trial raised by the record, we issued the writ.

### Child's Right to Counsel

Appellate counsel for Pamela contends: (1) due process of law mandates that independent counsel be appointed for a child in a proceeding to free the child from control of his natural parent; and (2) Civil Code section 237.5 requires the appointment of counsel to represent the minor. Because we conclude that the record does not support the trial court action in not appointing counsel pursuant to statute, we do not reach the constitutional issue.

Enacted in 1961 and amended from time to time, Civil Code section 232 et seq. embody a statutory scheme dealing with judicial action to declare a child free of the custody and control of his natural parents, generally as a prelude to adoption. (See 6 Witkin, Summary of Cal. Law (8th ed.) Parent and Child, § 106.) Section 232 states the statutory grounds upon which the child may be declared free of parental custody and control. Section 232.5 states: "The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child." Sections 232.9 through 237.5 are procedural sections. The latter provides in pertinent part: "The judge shall ascertain whether the minor and his parents have been informed of the right of the minor and his parents to be represented by counsel, and if not, the judge shall advise

the minor and the parents, if present, of the right of each of them to have counsel present. The court may appoint counsel to represent the minor whether or not the minor is able to afford counsel. If any parent appears and is unable to afford counsel, the court shall appoint counsel to represent each parent . . . ."

Civil Code section 237 authorizes the court to appoint "some suitable party to act in behalf of" the minor. Section 238 provides that the judgment in the proceeding to free the child from parental custody and control is conclusive and binding upon the child and, while expressly not limiting the right to appeal, removes from the court, "after making such order and judgment," the power to "set aside, change, or modify" the judgment.

■ Section 237.5 of the Civil Code vests discretion in the trial court to appoint counsel to represent the minor. As with any grant of judicial discretion, the power granted by section 237.5 must be construed as a limited one dependent upon the circumstances present in the particular case. If the circumstances require the appointment of counsel, counsel must be appointed. If not, counsel is not required. If the circumstances are such that reasonable minds may differ on the need for counsel for the child, then the trial court's determination is binding on review.

■ A closer question is presented on the burden of persuasion in the trial court. Section 237.5 is silent on the issue. The statute is subject to the construction that someone, be it the child, the parent, a party, or other interested agency, has the burden of establishing the need for independent counsel for the child before counsel need be appointed by the trial court. The statute is equally susceptible of the interpretation that counsel must be appointed unless the circumstances indicate that the child's interests will be adequately represented although he does not have his own lawyer.

The statutory scheme as a whole, viewed in light of current characterization of custody proceedings, indicates that the latter approach is that contemplated by the Legislature.

■ We have abandoned the approach that the child subject of custody litigation is a chattel. We recognize that he is a person whose future is as vitally affected as is that of the parties competing for his custody. (*In re Sherman M.* (1974) 39 Cal.App.3d 40, 44-45 [113

Cal.Rptr. 847]; *Adoption of Oukes* (1971) 14 Cal.App.3d 459, 469 [92 Cal.Rptr. 390]; *In re Eugene W.* (1972) 29 Cal.App.3d 623, 629 [105 Cal.Rptr. 736].) The Legislature's recognition of the rights of personality of the child as the touchstone of proceedings to free him from parental custody and control is evidenced by its mandate in Civil Code section 232.5 that the statutory scheme "be liberally construed to serve and protect the interests and welfare of the child." The Legislature's recognition of the importance of the proceedings to the child is shown by its enactment of Civil Code section 238 providing that the results of the action are conclusively binding upon the child. The Legislature's recognition of the significance of counsel to the protection of the child is disclosed by the reference in Civil Code section 237.5 to the child's "right" to counsel.

■ Liberal construction of Civil Code section 232 et seq. to serve and protect the interests and welfare of the child requires that the burden of persuasion with respect to the trial court's determination to appoint or deny the child independent counsel be placed upon justifying the decision to deny counsel. Unless the burden is allocated in that fashion, there may well be no one involved, except in an adversary position, in the proceedings to assert the right of a child too young to assert it for himself. If the right is not asserted, the child's right of personality, recognized as the primary consideration of the process, may be determined without the protection of counsel uninfluenced by his advocate's duty to another party. Thus, Formal Opinion No. 1976-37 of the Committee on Professional Ethics of the State Bar of California rules that a lawyer who discovers in the course of representing a client in a child custody proceeding that the interests of his client and the child are conflicting may not, without his client's consent, notify the court of the conflict nor suggest court appointment of separate counsel for the child.

We do not reach the issue of the nature of circumstances necessary to sustain the burden of establishing that counsel for the child need not be appointed in a proceeding to declare him free of parental custody and control.[2] ■ Here there is no basis in the record sustaining the commissioner's failure to appoint counsel to represent Pamela.

The only conceivable reason for the commissioner's not appointing counsel for Pamela which appears in the record is the presence of

[2]For example, the proposition that the petition is filed by a public agency rather than a private person, or the fact that the child is already a ward of the court, may be significant factors tending to establish that the interests of the child are represented.

Deputy County Counsel Briggs during the proceedings. His status was, to say the least, ambiguous, variously characterized as: "merely an amicus position . . . without participating as a necessary or even conditionally necessary party . . ."; "amicus curiae for the child's interest"; and "in a sort of amicus capacity." By reason of the various labels given to the Briggs appearance, the record may or may not be construed as indicating that Briggs was representing a person or organization with an interest parallel to that of the child so that representation of his client also represented the child's interest. The trial court resolved the ambiguity against treatment as representation of the interests of Pamela by finding that she was not represented and appointing counsel for her after the hearing. In light of that determination, we must conclude that the presence and action of Briggs[3] were not facts which excuse the failure to appoint counsel for the child.

Pamela having been denied her statutory right to counsel as provided in Civil Code section 237.5, the order of the trial court must be reversed.

### Other Contentions

Counsel for Pamela now having been appointed, it is unlikely that the issue of the power of the commissioner to act without a stipulation on behalf of the child will arise on retrial. The contention that the finding of lack of abandonment by the trial court is not supported by substantial evidence does no more than ask this court to reweigh matters of credibility and draw certain of various permissible inferences and thus to invade the province of the trial court. (*In re Gano* (1958) 160 Cal.App.2d 700 [325 P.2d 485].) ██ By her pleading containing charging allegations raising only the matter of abandonment and by agreeing through her counsel at trial that only the issue of abandonment was involved, Mrs. Crenshaw lost her right to rely on any other ground for declaring Pamela free of parental custody and control. The parties may, of course, move to amend the pleadings as a prelude to retrial. The record does not support the contention that the commissioner failed to consider the interest of the child. To the extent that the wishes of the child are relevant to the trial court determination (see Civ. Code, § 4600), those

---

[3]There is some question whether a deputy county counsel could here act for anyone other than the county without a conflict of interest. In no small measure, Pamela, Mrs. Dunlap, and Mrs. Crenshaw are all victims of a system by which the county assumes a statutory responsibility without adequate funding to discharge it. Delay occasioned by excessive social worker case loads has allowed a situation to develop that will be unnecessarily traumatic to one or more of the parties.

wishes are disclosed in the probation report, and it is unlikely that the court on retrial will not read and consider the report while disclosing its action in the record.

*Disposition*

The order is reversed.

Wood, P. J., and Lillie, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 2, 1976.