[Civ. No. 48279. Second Dist., Div. Three. Sept. 29, 1977.]

In re MARCOS S., a Minor.
COUNTY OF LOS ANGELES DEPARTMENT OF ADOPTIONS,
Petitioner and Respondent, v.
ANTHONY S., Objector and Appellant.

**COUNSEL**

Herbert F. Blanck, under appointment by the Court of Appeal, for Objector and Appellant.

John H. Larson, County Counsel, and Eric R. Young, Deputy County Counsel, for Petitioner and Respondent.

**OPINION**

**POTTER, J.**—This is an appeal from a judgment declaring Marcos S., a minor, free from parental custody and control of Anthony S., his father (hereinafter appellant), and retaining said minor in the custody and control of the Los Angeles County Department of Adoptions for purposes of adoptive planning and placement.

A petition was filed August 7, 1975, by the department of adoptions alleging that the minor, born October 6, 1971, was a person defined in Civil Code section 232, subdivision (a), subsections (1), (4) and (7).[1]

---

[1]As of the time of the petition and hearing in this matter, the text of these portions of Civil Code section 232 was as follows:

"(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:

"(1) Who has been left without provision for his identification by his parent or parents or by others or has been left by both of his parents or his sole parent in the care and custody of another for a period of six months or by one parent in the care and custody of the other parent for a period of one year without any provision for his support, or without communication from such parent or parents, with the intent on the part of such parent or parents to abandon such person. Such failure to provide identification, failure

Insofar as it was based upon subdivision (a)(1), the petition alleged that the minor had been left in the care of the department of public social services without any provision for his support and without communication from his parents with intent to abandon continuously since January 4, 1972. Additional facts relating to subdivision (a)(7) were alleged. They included the facts (1) that the minor's mother died on December 7, 1971, (2) that the minor was voluntarily placed with the county on January 4, 1972, and has remained ever since in the county's care, and (3) that since the minor's placement, appellant "has not supported nor communicated with the minor" and "it can be shown beyond a reasonable doubt that the return of the minor to his father would be detrimental to the minor and that the minor's father has failed and is likely to fail in the future to provide a home for the minor, provide care and control for the minor, and maintain an adequate parental relationship with the minor."

---

to provide, or failure to communicate shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him. If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents. In those cases in which the child has been left without provision for his identification and the whereabouts of the parents are unknown, a petition may be filed after the 120th day following the discovery of the child and citation by publication may be commenced. The petition may not be heard until after the 180th day following the discovery of the child.

"The fact that a child is in a foster care home, licensed under subdivision (a) of Section 16000 of the Welfare and Institutions Code, shall not prevent a licensed adoption agency which is planning adoption placement for the child, from instituting, under this subdivision, an action to declare such child free from the custody and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel and if there is no county counsel, the district attorney shall institute such action.

". . . . . . . . . . . . . . . . .

"(4) Whose parent or parents are convicted of a felony, if the felony of which such parent or parents were convicted is of such nature as to prove the unfitness of such parent or parents to have the future custody and control of the child, or if any term of sentence of such parent or parents is of such length that the child will be deprived of a normal home for a period of years.

". . . . . . . . . . . . . . . . .

"(7) Who has been cared for in one or more foster homes under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds beyond reasonable doubt that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future to
"(i) Provide a home for said child;
"(ii) Provide care and control for the child; and
"(iii) Maintain an adequate parental relationship with the child.
"Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period."

At the time the petition was filed, appellant was in prison as a result of his conviction of involuntary manslaughter in the death of the minor's mother. He was served August 20, 1975, as a citee.

Appellant wrote letters of August 27, 1975, and September 14, 1975, requesting a continuance of the hearing to permit him to defend himself and to attend the hearing. The court made a removal order to permit appellant's attendance.

A probation officer's report was filed September 23, 1975, and on December 10, 1975, a hearing was conducted on the petition. Six witnesses were presented. Witnesses for the petitioner included Deborah Mullen, a foster mother with whom the minor had been placed by the department of public social services, from September 1974 to July 1975; William Maris, a children's services worker with the department of public social services familiar with the department's handling of the minor and its records in respect thereto, and Jojean Johnson, a natural parents' worker with the Los Angeles County Department of Adoptions who had dealt with appellant in relation to the proposed adoption of the minor. The witnesses on behalf of appellant included his sisters, Lupe R. and Amparo H., and appellant. Documentary evidence was received, including the probation officer's report, the record of appellant's manslaughter conviction, the Adult Authority parole decision of November 10, 1975, setting appellant's parole date as July 9, 1977, and stating reasons for such action, and a progress report from the Adult Authority. Also received were a series of letters from appellant to the department of public social services and the department of adoptions. These letters of appellant fell into three categories: (1) letters written in December 1972 relating to three of appellant's minor children (Angela, Andrew and Adella) who were then in foster homes as wards of the juvenile court, expressing appellant's desire that the children be returned to his mother's home; (2) a letter of November 1973 relating to these same children, requesting that they be left with members of appellant's family and requesting termination of their status as wards of the court; (3) a series of letters from December 1974 to July 1975, relating to the minor's status, initially objecting to his continued retention in a foster home and, thereafter, objecting to any adoptive placement.

Another series of appellant's letters was received in evidence. They were addressed to two of appellant's children, Adella and Tony, Jr., in care of appellant's sister, Lupe R., ranging in date from April 1974 to

October 1975. Each of them was embellished with original cartoons and contained extravagant assurances of continued affection and concern. One of the latter group of letters contained a single reference to the fact that minor's birthday was imminent. None of the others contained any reference to minor.

The evidence showed without conflict that from the time of the death of minor's mother, December 7, 1971, until around August 23, 1973, minor was cared for in the home of appellant's sister, Mary M., with support provided by the department of public social services. Appellant was a fugitive from justice for the first seven months of this period and thereafter was in custody. On August 10, 1973, appellant was sentenced to prison for the term prescribed by law for the crime of involuntary manslaughter of minor's mother. According to the records of the department of public social services, minor was placed in a foster home on August 23, 1973. There was "some conflict among the family at the time the child was removed" between appellant's sisters, Mary M. and Amparo H. The probation report states that the minor's placement resulted from "the intercession of his aunt Amparo H." The latter testified, however, that her role was simply that of advising the social worker that appellant wished to speak to her in the county jail and that it was appellant "who initiated the child being placed in foster care." One of appellant's letters confirms that he consented to the placement.[2]

The department of public social service records relating to the foster home placement of minor at that time also reflected the fact that appellant's sister, Amparo H., "did not want to keep Marcos at this time." These records further indicated that pursuant to the department's policy "to attempt to reunite children with parents, or alternatively to unite them with possible relatives," attempts were made to "seek alternative plans with regard to [minor] toward the relatives" and "failing that for a foster planning."

The first foster home placement of minor was in the Richards foster home. This continued from August 1973 to September 1974. From September 1974 to July 1975, minor was placed in the Mullen foster home.

---

[2]This letter also states that at the time he consented, appellant obtained a written acknowledgment that his consent was conditioned upon a promise that his son would never be taken from him and refers to the writing as his "ace." He did not, however, at the time of trial give any testimony to this effect nor produce any such document.

In September 1974, minor was referred to the department of adoptions. The reference was made routinely as a result of department policy on the basis that minor "had no relationship with any parents or any relatives." An adoptive placement was made in July 1975.

There was conflicting evidence with respect to the amount of contact between minor and members of appellant's family during the period of foster home placement. There was, however, no dispute as to the limited extent of appellant's contact with minor. Appellant testified that he had never written to the minor and that his only contact with him during this period was on a visit Easter Sunday, 1974, at Folsom Prison, where minor was brought by one of appellant's sisters. Appellant claimed lack of knowledge of where the minor had been but admitted that his sister, Amparo H., had told him minor "was in this foster home." According to Amparo H., during the period of placement in the Richards foster home, there was steady weekend visitation of the minor in her home.

There was conflict in the testimony of Deborah Mullen and Amparo H. concerning claimed visitation during the period minor was placed in the Mullen home. According to Mullen, she had no contact with any relatives of the child during the period September 1974 to July 1975, and the only contact between the minor and any such relatives occurred in December 1974 when a social worker picked the child up and took him to the adoption agency. According to Mullen, while minor was in her foster home, he received no letters or phone calls, no birthday or Christmas cards, and no gifts or other support of any nature from appellant or from any of his family. Amparo H., on the other hand, claimed that pictures of the minor, received as exhibits, were made on visits to her home Thanksgiving and Christmas of 1974. Amparo H., however, did not claim that she had any contact with Deborah Mullen.

The probation officer's report revealed that minor suffered sleep disturbance and some hyperactivity early in his foster home experience. A psychiatric evaluation "indicated an ability to adjust well and regain emotional security when placed in a warm nurturant home and when he did not have to experience separation from the mother figure." According to the witness Mullen, minor experienced some difficulty sleeping early in the period he was placed with her but did not require therapy during that period and "appeared fine" at the time the adoptive placement was made.

The witness Johnson testified that minor was doing "very well" in the "approved" adoptive home since the placement there in July 1975. Johnson also testified concerning consideration which had been given to placing minor with his aunt Amparo H. for adoption and "that there was a decision made with the aunt not to pursue adoption," which decision not to adopt "was a mutual consent on the part of Mrs. [H.] and the social worker." Amparo H. testified that she and her husband "signed papers to adopt" the minor, but that she did not know what became of the application. She did not contradict the testimony that a mutual decision was made by her and the social worker not to pursue the adoption.

Appellant testified concerning his numerous arrests and his convictions. He explained that several of the arrests related to charges which were dropped, but he admitted a conviction of assault with great bodily harm (stabbing) upon a first common law wife in 1963, provoked by her alleged infidelity. He also admitted a conviction of grand theft auto in 1956. He claimed innocence of any wrongdoing in the death of minor's mother, contradicting the probation officer's report that he had admitted that the gun discharged during the course of "an argument over her infidelity" when "he picked up the gun to hit her." Appellant did admit that he failed to take his wife to an emergency hospital four blocks away and "kept running for seven months."

Appellant further testified that he intended upon release from prison to accept a job offer in a garage at which he expected to earn "from three to four hundred dollars a week," though he had not been told this; he was told only "they would start me at $2.50," which would be more like a commission than a salary. Appellant intended to live with his mother "until I can get myself together" and "like I told my people that my kids will stay where they are" during this period. According to petitioner's witness Maris, appellant stated to him: "His plan would be that he would be released and he would go to live with his mother, and he had some possibilities of a job, and he would live with her approximately a year, and after that time he would hope to be able to have the children returned to him."

The probation officer's report recommended that the petition be granted pursuant to Civil Code section 232, subdivision (a)(7). It cited appellant's past history which "has shown him to be a very violent abusive man and as a model would probably be detrimental to this

young son." In view of appellant's past arrest history and current imprisonment, the probation officer questioned his employability and referred to the four separate occasions that minor's mother had applied for public assistance during the period of her common law marriage to appellant.

At the conclusion of the hearing and after argument, the court orally indicated its intended decision to grant the petition pursuant to Civil Code section 232, subdivisions (a)(1) and (a)(7), and to deny it insofar as it was based upon subdivision (a)(4), and ordered findings prepared by counsel for the petitioner. Thereafter, a judgment was submitted reciting findings in the body of the judgment, as follows: "Evidence having been introduced, and the written report of the Probation Officer filed herein having been read and considered by the Court, and the Court having rendered its decision in favor of petitioner and against citee, Anthony S. . . . aka Tony S. . . , on all issues under California Civil Code Section 232 (a)(1&7); and the Court having found that an award of custody of Marcos S. . . . , minor, to said citee, would be detrimental to said minor and that an award of custody to a non-parent is required to serve the best interests and welfare of said minor; and the Court having found beyond a reasonable doubt that return of the minor to the natural father would be detrimental to the minor and that the natural father has failed during such period of two years, and is likely to fail in the future, to provide a home for said child, provide care and control for the child, and maintain an adequate parental relationship with the minor; . . ."

On the basis of the above findings, the court adjudged minor "a person described under California Civil Code section 232 (a)(1&7)" and declared him "free from the parental custody and control" of appellant. The judgment further adjudged that "the care, custody and control of said minor is and should remain with the County of Los Angeles, Department of Adoptions for purposes of adoptive planning and placement."

### Contentions

Appellant contends that the judgment is erroneous because (1) the court did not advise the minor of his right to counsel or provide counsel for him; (2) there was no substantial evidence to support a finding either of abandonment or that it would be detrimental to return minor to his father; and (3) the court failed to consider the wishes of the minor. Respondent controverts each of these contentions.

*Discussion*

We find no error in the judgment. The record demonstrates that the interests of the minor were adequately represented without the appointment of separate counsel to represent him. Substantial evidence supports the court's findings that return of the custody of the minor to appellant would be detrimental to the minor and that appellant has failed, during a period of two years, and is likely to fail in the future, to provide a home for the minor; provide care and control for the minor, and maintain an adequate parental relationship with the minor. Under the circumstances of this case, the court did not err in failing to ascertain and consider the wishes of the minor.

*The Court Did Not Err in Failing*
*to Provide Counsel for the Minor*

■ Appellant's contention that the minor was required to be informed of his right to counsel and to have counsel appointed for him is based upon Civil Code section 237.5 and upon the decision of this court in *In re Dunlap,* 62 Cal.App.3d 428, 439 [133 Cal.Rptr. 310].

Section 237.5 provides in part as follows: "At the beginning of the proceeding on a petition filed pursuant to this chapter, the judge shall first read the petition to the child's parents, if they are present, and may explain to the child the effect of the granting of the petition and upon request of the minor upon whose behalf the petition has been brought or upon the request of either parent the judge shall explain any term or allegation contained therein and the nature of the proceeding, its procedures, and possible consequences. The judge shall ascertain whether the minor and his parents, have been informed of the right of the minor and his parents to be represented by counsel, and if not, the judge shall advise the minor and the parents, if present, of the right of each of them to have counsel present. The court may appoint counsel to represent the minor whether or not the minor is able to afford counsel. If any parent appears and is unable to afford counsel, the court shall appoint counsel to represent each parent who appears unless such representation is knowingly and intelligently waived. The court may continue the proceeding for not to exceed 30 days, as necessary to make an appointment of counsel, or to enable counsel to acquaint himself with the case or to determine whether the parents are unable to afford counsel

at their own expense. The court may appoint private counsel or the public defender to represent the minor or the parents."

Section 237.5 does not expressly require the court to appoint counsel for the minor, though appointment of counsel for a parent, who is unable to afford counsel, is required. The requirement that the court advise the minor, *if present,* of the right to counsel does not apply here since the minor was not present, and there was no requirement that he be present. Furthermore, it is difficult to perceive what purpose would be served in advising a child four years and two months of age of his right to have counsel.

Nor does the decision in *In re Dunlap, supra,* require reversal of the judgment in this case because of the failure of the court to appoint counsel for the minor. In *Dunlap,* the petition to free the minor from custody was denied. The only parties to the proceeding represented by counsel were the petitioning prospective adoptive parent and the natural mother. A deputy county counsel attended the trial in an ambiguous capacity, variously referred to as " 'merely an amicus position,' " " 'amicus curiae for the child's interest,' " and " 'in a sort of amicus capacity.' " (62 Cal.App.3d at p. 440.) Because of peculiar circumstances of the case by virtue of which a situation had developed "that will be unnecessarily traumatic to one or more of the parties" (*id.* at p. 440, fn. 3), as a result of the department of adoptions' inaction, the court noted a "question whether a deputy county counsel could here act for anyone other than the county without a conflict of interest" (*ibid.*). The court, therefore, concluded that it was an abuse of discretion not to have provided representation for the minor. The court said in this respect (*id.* at p. 438): "Section 237.5 of the Civil Code vests discretion in the trial court to appoint counsel to represent the minor. As with any grant of judicial discretion, the power granted by section 237.5 must be construed as a limited one dependent upon the circumstances present in the particular case. If the circumstances require the appointment of counsel, counsel must be appointed. If not, counsel is not required. *If the circumstances are such that reasonable minds may differ on the need for counsel for the child, then the trial court's determination is binding on review.*" (Italics added.)

The court held that the "burden of persuasion" with respect to the trial court's determination to deny the minor independent counsel should rest upon the party "justifying the decision to deny counsel." (*Id.* at p. 439.)

The court added, however (*ibid.*): "We do not reach the issue of the nature of circumstances necessary to sustain the burden of establishing that counsel for the child need not be appointed in a proceeding to declare him free of parental custody and control.[2] . . ."

*In re Dunlap* does not require reversal of the judgment. The circumstances are such "that reasonable minds may differ on the need for counsel for the child . . . ." The petition was filed by a public agency seeking to terminate appellant's custody and control upon the ground that it "would be detrimental to the minor." There were no circumstances creating conflict of interest such as appeared in *Dunlap*. Consequently, the trial court's determination is binding on this court.

*Substantial Evidence Supports the*
*Court's Findings Under Civil Code*
*Section 232, Subdivision (a)(7)*

It is apparent from the content of the judgment that the court placed its main reliance upon subdivision (a)(7) of Civil Code section 232, rather than upon subdivision (a)(1). Though as of the date of the judgment specific findings were not required (*In re Rose G.,* 57 Cal.App.3d 406, 418 [129 Cal.Rptr. 338]), the trial court ordered findings. Specific findings were made on all of the elements specified in subdivision (a)(7). The court, however, made no specific finding of the essential elements specified in subdivision (a)(1): that is, there is no finding that for a period of six months minor was left by appellant in the care and custody of another without any provision for his support and without communication "with the intent on the part of such parent . . . to abandon such person. . . ." Thus, though the judgment does recite that the court rendered its decision in favor of petitioner on the basis of "Civil Code section 232 (a)(1&7)" and declares that the minor is a person coming under both subdivisions, we construe it as based primarily upon section 232, subdivision (a)(7).

The scope of review of judgments in proceedings to free minors from parental custody and control is stated in *Adoption of R. R. R.,* 18 Cal.App.3d 973, 983 [96 Cal.Rptr. 308]: "In the application of the principles set forth above to the facts of this case, this court is governed

---

"[2]For example, *the proposition that the petition is filed by a public agency* rather than a private person, or the fact that the child is already a ward of the court, *may be significant factors tending to establish that the interests of the child are represented.*" (Italics added.)

by the following principles: 'It is neither the duty nor the right of this court to resolve conflicts in the evidence, pass on the credibility of the witnesses, or determine where the preponderance of the evidence lies. These are all matters to be decided by the trier of fact in the court below. The power of any appellate court commences and terminates with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of respondent on appeal and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact. All evidence favorable to respondent is assumed true and the unfavorable is discarded. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed.' (*Garrett* v. *Duncan* (1959) 176 Cal.App.2d 296, 298-299 [1 Cal.Rptr. 461]. See also *Adoption of Oukes* (1971) 14 Cal.App.3d 459, 466 [92 Cal.Rptr. 390]; *In re Morrow, supra,* 9 Cal.App.3d 39, 46-47 [88 Cal.Rptr. 142]; *In re Conrich, supra,* 221 Cal.App.2d 662, 668 [34 Cal.Rptr. 658]; *In re Zimmerman, supra,* 206 Cal.App.2d 835, 845-846 [24 Cal.Rptr. 329]; *In re Salazar, supra,* 205 Cal.App.2d 102, 106-107 [22 Cal.Rptr. 770]; *In re Bisenius, supra,* 173 Cal.App.2d 518, 522-523 and 524 [343 P.2d 319]; *In re Williams, supra,* 133 Cal.App.2d 515, 518 [284 P.2d 510]; *In re Jones, supra,* 131 Cal.App.2d 831, 836 [281 P.2d 310]; and *In re Nash* (1951) 102 Cal.App.2d 220, 222 [227 P.2d 270]. Cf. *In re Miller* (1966) 244 Cal.App.2d 454, 460-461 [53 Cal.Rptr. 211]; and *In re Corrigan, supra,* 134 Cal.App.2d 751, 754-755 [286 P.2d 32].)"

 Applying this standard, the judgment must be affirmed. Without conflict, the evidence showed that the minor had been cared for "in one or more foster homes under the supervision of . . . the county welfare department or other public . . . . child-placing agency for two or more consecutive years."

The court's finding "beyond a reasonable doubt that return of the minor to the natural father would be detrimental to the minor . . ." is supported by the evidence contained in the probation report and the recommendation of the probation officer. Though in large part hearsay, this probation report constituted evidence upon which findings could properly be based. In *In re Rose G., supra,* 57 Cal.App.3d at page 425, footnote 5, the court said: "Civil Code section 233 provides, in

pertinent part, that in section 232 proceedings '[t]he court shall receive such report in evidence and shall read and consider the contents thereof in rendering its judgment.' Evidence Code section 1200 provides for admissibility of hearsay evidence meeting the conditions of an exception to the hearsay rule created by *statute* or *decisional law.* Exceptions to the hearsay rule may thus be found in other codes as well as in the Evidence Code. (See the Senate Committee on Judiciary's comment to Evid. Code, § 1200.)"

The matters related in the probation report supported the probation officer's evaluation of appellant as "a man of violent passions over which he apparently had no control" and "as a very violent abusive man" who "as a model would probably be detrimental to this young son."

The court's finding of detriment is further supported by the evidence of the lack of any parental relationship between the minor and appellant since the minor was two months old. The only in-person contact between minor and appellant from 1971 to the date of the hearing was a single visit on Easter Sunday 1974 at which time minor was taken to Folsom Prison for a visit by one of appellant's sisters. This lack of contact was an outgrowth of defendant having caused the death of minor's mother under conditions which resulted in his conviction of involuntary manslaughter. For seven months appellant voluntarily absented himself as a fugitive. Thereafter, his physical absence was unavoidable as he was imprisoned. There was, however, no evidence that he was prevented from maintaining contact. He had maintained contact on a continuing basis with others of his six children, by minor's mother, who remained in the homes of his sisters through steady correspondence written in care of the sisters. Some of these letters which were in evidence acknowledged that the addressee could not read, but they were designed to be read to the recipient and contained imaginative cartoons which the children could enjoy. By contrast, the minor never received so much as a single birthday or Christmas card.

The evidence concerning minor's placement in a series of foster homes demonstrated the importance of an early provision of a "warm nurturant home [where] he did not have to experience separation from the mother figure," noted in the probation officer's report as essential to minor's "emotional security." As stated in *In re Rose G., supra,* 57 Cal.App.3d at page 425: "Also, an important element that a trial court must consider, when making a decision about children, is the impact of the passage of

time. Childhood is short; many basic attitudes and capacities are developed in the very early years. Ties are formed to the adults present in the child's life, and can only be broken by inviting emotional disaster." In order to return the minor to appellant, it would be necessary to provide him foster home care on a continuing basis for an additional two and one-half years as of the date of the hearing. This was true because appellant had another 18 months before he was eligible for parole and acknowledged that it would take him an additional year to "get myself together" during which the children would have to stay "where they are." At age four, having already spent two years in foster homes, further postponement of the establishment of normal ties of some permanence between minor and adults was "inviting emotional disaster."

The court was justified in finding that appellant was not able to provide such family ties in a sister's home. The evidence showed that the initial arrangement in which appellant's sister Mary M. cared for minor was terminated at the request of appellant. At that time another sister, Amparo H., was unwilling to accept responsibility for minor and the department of public social services' efforts to find alternative arrangements within the family were not successful. Petitioner's witness Johnson testified that the proposal that minor be adopted by Amparo H. was abandoned as a result of mutual agreement. Amparo H. was called as a witness in applicant's behalf and testified that she had filed an application to adopt minor.[3] She did not, however, testify as to the disposition of such application nor deny that she voluntarily withdrew it.

The importance of providing the benefits of stability and security to children residing in foster homes at public expense was expressly recognized by the Legislature in the act adopting Civil Code section 232.9 (Stats. 1970, ch. 583), the preamble of which states: " 'It is the intention of the Legislature in enacting this act to extend adoption services *for the benefit of children* residing in foster homes at public expense by facilitating legal actions required for adoption *so that these children may be placed in adoptive homes where they will have the benefits of stability and security.'* " (*In re Eugene W.*, 29 Cal.App.3d 623, 629 [105 Cal.Rptr. 736].)

---

[3]Such an adoption, of course, could not have been accomplished without termination of appellant's custody and control, either by his consent or by proceedings to declare minor free from such custody and control. (Civ. Code, § 224.)

There was, therefore, substantial evidence from which the court could and did find that from August 1973 forward appellant had failed to provide a home for minor, had failed to provide care and control for the minor, and had failed to maintain an adequate parental relationship with the minor. This same evidence likewise supported the court's finding that appellant was likely to so fail in the future. His plans to provide such care and control related to a period two and one-half years in the future. To a child the age of the minor, deferment of such provision for a stable home for such an extended period was the equivalent of denial. Appellant's failure in the future to maintain an adequate parental relationship with the child was inferable from his past failure in that respect and the lack of any evidence of his intent to change.

Since we find that the court's findings pursuant to Civil Code section 232, subdivision (a)(7), are supported by the evidence, it is unnecessary to consider the sufficiency of the evidence to support the implied finding of abandonment under subdivision (a)(1).

*The Court Did Not Err in Failing to*
*Ascertain the Minor's Wishes With*
*Respect to the Award of Custody*

■ The record does not indicate that the court made any investigation as such into the question of minor's preference, if any, as to custody. Civil Code section 4600 states in relevant part: ". . . If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof."

The evidence before the court possibly bearing upon the propriety of ascertaining the minor's preference was to the effect that (1) during the entire period September 1974 to July 1975, while minor was in the Mullen foster home, he had had no contact with appellant or with his family except on a single occasion when he was taken to visit with the family, (2) that the child never spoke about his natural parent while in the Mullen home, and (3) the probation report statement that "he appears to be responding to the love and care provided in his current foster home." Bearing in mind that the child was barely four years of age at the time of the hearing, it is difficult to conceive how he could have had a capacity to form a preference for appellant. Under the circumstances, the court was justified in concluding that he was not of sufficient

age and capacity to justify any inquiry into his preference. The court's action in this respect is not contrary to anything held in *In re Dunlap, supra,* 62 Cal.App.3d 428. The opinion in that case merely referred to the fact that the probation officer's report did disclose the four-year-old child's wishes. The court found it unnecessary to determine the effect of such expressed wishes in light of the fact that a retrial was required in which it was "unlikely that the court . . . will not read and consider the report while disclosing its action in the record." (*Id.* at p. 441.) *Dunlap* is no holding that under all circumstances the wishes of a four-year-old child must be ascertained and taken into account in making an order concerning his custody.

The judgment is affirmed.

Ford, P. J., and Allport, J., concurred.