[No. A037839. First Dist., Div. Four. May 20, 1988.]

In re KATRINA C. et al., Persons Coming Under the Juvenile Court Law.
CONTRA COSTA COUNTY SOCIAL SERVICE DEPARTMENT, Plaintiff and Respondent, v.
GLENN C., Defendant and Appellant.

542

**COUNSEL**

Alan R. Bergman, under appointment by the Court of Appeal, for Defendant and Appellant.

Victor J. Westman, County Counsel, Michael D. Farr and Sharon L. Miller, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**CHANNELL, J.**—Glenn C. appeals from the jurisdictional findings and dispositional orders of the Contra Costa County Juvenile Court relating to

his three children pursuant to dependency proceedings brought under Welfare and Institutions Code section 300, subdivision (a).[1]

On October 21, 1986, separate petitions were filed on behalf of Katrina, Eugene, and Constance C., alleging that they were minors in need of proper and effective parental care and control. The petitions alleged that the minors had been disciplined with "excessive and inappropriate physical force" by their father and stepmother and were afraid to return to their home. On November 21, 1986, the juvenile court sustained each of the allegations and found that the minors were persons described by section 300, subdivision (a).

On January 23, 1987, a contested disposition hearing was held, at the conclusion of which the minors were declared dependent children of the juvenile court. They were ordered placed in the home of their natural mother, Thelma O., under the supervision of the social service department. The father's request for a reunification plan was denied.

On appeal, the father contends (1) the evidence in support of the jurisdictional finding was insufficient; (2) the trial court erroneously failed to articulate the standard of proof applied at the disposition hearing; and (3) the trial court erroneously refused to order a reunification plan. Although we conclude the evidence was sufficient to sustain the jurisdictional findings, we agree with appellant on the latter two issues.

## I. FACTS

Glenn C. and Thelma O. were married in Nevada in 1976. Three children, Katrina, Eugene, and Constance, were born during the marriage. The two were divorced in Mississippi in 1982, while the father was serving in the Air Force. At that time, the Mississippi court awarded joint legal custody to both parents, with the father to have physical custody for nine months and the mother to have custody for three months each year.

Thereafter, there was continuing animosity between the parties. After the mother returned to California, the domestic relations department of the Contra Costa County Superior Court twice refused to exercise jurisdiction over the children, finding that Mississippi was, or still appeared to be, their home state. On November 26, 1985, the Mississippi court found that the mother was in wilful violation of its orders relating to her portion of the time with the children and in keeping the father informed of her where-

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

abouts. That court therefore modified its original custody order and awarded custody to the father with reasonable visitation for the mother. At some point, the father returned to Napa County, California, where he lived with the children and his second wife, Patricia.

There was a conflict in the evidence concerning the circumstances underlying the allegations of the petitions. On October 18, 1986, the mother contacted the social service department after picking up the children for a period of visitation. She reported that Constance, five years old, had complained to her that the stepmother had hit her across the face so hard that the child fell off a chair onto the floor. The social worker requested the mother to check the other children for marks. The mother reported back that Eugene, seven years old, had linear scars on his buttocks. The oldest child Katrina, eight years old, said that she had been hit with a belt by both her father and stepmother. All three children said they were afraid to return to the father's home. Juvenile authorities intervened and, after interviewing and examining the children, these petitions were filed.

At the jurisdictional hearing, each child testified as to their home situation and their fears of living with the father and stepmother.

Dr. James Carpenter, the chief of pediatrics at Contra Costa County Health Services, testified concerning his examination of the children. He stated that Constance had "a very faint bluish-brownish bruise on her left cheek" which confirmed "her story of an excessive force slapped on her face." In his opinion, this was indicative of abuse rather than discipline "because it was a bruise and a mark that was more persistent than just a few hours." Eugene showed loop-shaped marks, predominantly on his right buttock. The brown color of these markings indicated "there was more than a small amount of blood under the skin." The doctor diagnosed Eugene as "a victim of child physical abuse because of his history, excessive trauma, and the findings on his body of typical loop marks consistent with either a doubled-up extension cord or a doubled-up belt." The doctor found no significant physical markings on Katrina but, based on the histories and findings as to the other children, he found that she had a history "suggestive" of child physical abuse.[2]

Appellant offered evidence tending to show a lack of abuse. The children's school principal and two of their teachers testified that even though they had had occasions to look closely at the children, they had not observed anything suggestive of child abuse. A pediatrician testified that one

---

[2] Appellant acknowledges that even if the case regarding Katrina may be weak, a juvenile court may assume jurisdiction over all children so long as one of them is found to fall within the provisions of section 300.

month before these petitions were filed, the stepmother suspected sexual encounters at the mother's house and, at her request, he had examined the children at that time. But the doctor had seen nothing indicative of either sexual or physical abuse.

Finally, the social worker was called as an adverse witness. She expressed her opinion that the children would not be hit again if returned to the father's home due to the attention created by these dependency proceedings. She nevertheless felt it would not be in the best interests of the children to return to their father "as long as they express the fear that they do about going home."

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

Appellant first contends the evidence in support of the jurisdictional finding was insufficient to prove present danger to the children. Appellant acknowledges that there was evidence from which the trial court could infer that the children had not been properly cared for, but he maintains that to establish jurisdiction under section 300, it must also be found that the children are presently (i.e., at the time of the hearing), persons described by that section. Under subdivision (a) of section 300, for example, the minor must be a person "[w]ho *is* in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising care or control, or has no parent, guardian, or custodian actually exercising care or control." (Italics added.)

In *In re Melissa H.* (1974) 38 Cal.App.3d 173 [113 Cal.Rptr. 139], an unfitness matter brought under subdivision (d) of what is now section 300, it was held the use of the present tense verb in the statute indicates an intent that the unfitness exist at the time of the hearing. Nevertheless, it was also held that evidence of past events can aid in a determination of present unfitness. (*Id.,* at p. 175.)

Here, there was evidence of an abusive history between the father, stepmother and the children, and of the children's expressed fear about returning to the father's household. Moreover, Dr. Carpenter's testimony constituted competent professional evidence of such a nature as to constitute, in itself, prima facie evidence of the children's need of proper and effective parental care sufficient to support a finding under section 300, subdivision (a). (Former § 355.1; see now, § 355.1, subd. (a).)

Appellant argues that the testimony of the social worker concerning her belief that the children would not be hit again destroyed this presumption

set forth in section 355.1, thereby rendering her testimony uncontradicted and binding on the trial court. While that presumption was one affecting the burden of producing evidence (former § 355.6; see now, § 355.1, subd. (c)), which presumption disappears upon the introduction of evidence which would support a finding of its nonexistence (Evid. Code, § 604), the trier of fact, here the juvenile court, must still weigh the inferences arising from the doctor's testimony which gave rise to the presumption against the contrary evidence provided by the social worker and resolve the conflict. (See Cal. Law Revision Com. com., Deering's Ann. Evid. Code, § 604.) The court was free to accept the inferences arising from the testimony and opinions of the doctor and to disbelieve and refuse to accept those arising from the unsubstantiated testimony of the social worker.[3]

■ In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible. Where there is more than one inference which can reasonably be deduced from the facts, the appellate court is without power to substitute its deductions for those of the trier of fact. (*In re Marcos S.* (1977) 73 Cal.App.3d 768, 781 [140 Cal.Rptr. 912].) ■ Viewing the evidence in light of these principles, the evidence was sufficient to support the jurisdiction findings of the juvenile court.

## B. *Standard of Proof*

■ Appellant next contends that the trial court never articulated the standard of proof it was applying during the disposition hearing and that this was prejudicial error. Respondent argues that placing the minors with their mother was an appropriate exercise of discretion by the juvenile court, and the court's order should not be overturned due to its failure to enunciate a standard of proof. Appellant acknowledges the general rule which presumes that a trial court applied the proper standard of proof where there is no conclusion of law or other articulation of the standard used by the court. He argues, however, that that rule is inapplicable, and the articula-

---

[3] The entire testimony relied upon by appellant was as follows: "Q. Ms. James, after having been involved in this case and after having spoken to Glenn and Pat about what was going on in terms of punishment at the house, are you secure in the belief that if the children were returned they would no longer be at physical risk? I guess you couldn't answer that totally, absolutely one hundred percent, but—[¶] A. Glenn and Pat have told me that they would not hit the children and I believe at this point in time, with all of the attention being placed on them, that they probably would not. Naturally I can't give any kind of assurance."

tion of the standard is required where either a new standard of proof has been recently announced or the applicable standard is unclear. (*In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625 [179 Cal.Rptr. 688].) We conclude, under the particular circumstances of this case, that appellant's position is well taken.

Historically, the appropriate standard of proof to be applied at the jurisdictional and dispositional hearings in dependency cases has been a much litigated one, which litigation continues to this day. (See *In re Jennifer V.* (1988) 197 Cal.App.3d 1206, 1210-1211 [243 Cal.Rptr. 441].) For several years, the law was "not entirely clear." (See 2 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) p. 97 [two possible interpretations of case law suggested—both wrong]; compare 2 Cal. Juvenile Court Practice (Cont.Ed.Bar Supp. 1986) p. 25 [supplement author disagrees with book authors, offers correct interpretation, but notes "this controversy is still not resolved by the courts"].)

■ Confusion in this area was engendered by an apparent blurring in case law, including one case decided by this court (*In re Phillip B.* (1979) 92 Cal.App.3d 796 [156 Cal.Rptr. 48]), between the jurisdictional finding and the dispositional order in dependency cases. (*In re Bernadette C., supra,* 127 Cal.App.3d at p. 624). Based on more careful recognition of the two-phased aspect of juvenile dependency proceedings, it is now clear that the burden of proof at the jurisdiction phase in dependency cases is proof by a preponderance of the evidence. (*Ibid.*; see §§ 355, 358, subd. (a), 701; see also *In re Jennifer V., supra,* 197 Cal.App.3d at pp. 1210-1211.) On the other hand, the burden of proof at the disposition phase turns on the nature of the intended dispositional order. If the minor is to remain in the home, proof by a preponderance of the evidence is sufficient. If the minor is to be removed from the physical custody of a parent or guardian, clear and convincing evidence of abuse or neglect is required. (*Ibid.*)

■ At least one ambiguity still remained in the case law, however, when this case was heard. In *In re Cheryl H.* (1984) 153 Cal.App.3d 1098 [200 Cal.Rptr. 789], the court articulated its holding in the following manner: "The more stringent standard of proof by clear and convincing evidence *only* applies if a child is removed from her home *and custody is awarded to a nonparent.* (W&IC, § 361, subd. (b); Civ. Code, § 4600.)" (*Id.,* at p. 1114, italics added.) What standard applies if a child is removed from the home of one natural parent and custody is awarded to the other natural, but noncustodial, parent? The *Cheryl H.* holding strongly indicates that the less stringent preponderance of the evidence standard would be sufficient. Despite thorough briefing, no case clearly holding to that effect has been cited to us.

In 1986 the Legislature addressed this particular problem by revising section 361. Section 361 now provides, in pertinent part: "(b) No dependent child shall be taken from the *physical custody of his or her parents* or guardian or guardians *with whom the child resides at the time the petition was initiated* unless the juvenile court finds *clear and convincing evidence* of the following . . . ." (Stats. 1986, ch. 1122, § 11, italics added.) Alternative circumstances justifying removal from parental custody are then set forth. This section took effect on January 1, 1987,—that is, after the completion of the jurisdiction hearing and before the disposition hearing in this case. As a rule of procedure, this new statute requiring the higher standard of proof was applicable to the disposition hearing held on January 23, 1987.

■ Even so, appellant and the county counsel seem to agree that the newly amended section 361 is at least "arguably ambiguous" in that it is difficult to tell if the phrase "with whom the minor resides at the time the petition was initiated" modifies "parents" as well as "guardian or guardians." Unless it modifies the word "parents," the higher standard still might not apply to our facts. But we think the intent of the statute is clear. As part of the same 1986 bill that amended section 361, section 361.2 was added to the juvenile court law, relating to shifts in custody from one parent to the other. (See Stats. 1986, ch. 1122, §§ 11, 12.) Subdivision (a) of section 361.2 begins by stating: "*When a court orders removal of a minor pursuant to Section 361,* the court shall first determine whether there is a parent of the minor, with whom the minor was not residing at the time that the events or conditions arose that brought the minor within the provisions of Section 300, who desires to assume custody of the minor." (Italics added.) Under this statute, if that parent requests custody, the court must place the minor with that parent unless it finds that such placement would be detrimental to the minor. Construing sections 361 and 361.2 together, we think the Legislature clearly intended that the "clear and convincing" language of section 361 apply to shifts in custody between parents, such as we have in this case.

■ Moreover, we are not inclined to accept appellant's argument that an articulation of the standard of proof is always required when a new standard of proof is "announced" by a legislative change rather than by judicial decision. Unlike a judicial pronouncement, a new statute benefits from a longer lead time and greater attendant publicity before its effective date. Particularly where the judicial officer is handling a specialized caseload, as in this case, a reviewing court may presume that the trial court applied the appropriate new standard and no articulation would be required. (See *In re Bernadette C., supra,* 127 Cal.App.3d at p. 625.)

That presumption is dispelled, however, by the factual circumstances of this case. First, the applicable standard of proof had previously been un-

clear. Second, the conduct of these proceedings bridged the effective date of the new statute, changing the standard of proof applicable to the disposition hearing held on January 23, 1987. Finally, and most significant, the presumption is overcome by the fact that the record affirmatively indicates the court was unaware of another procedural change brought about by the addition of the companion section 361.2. (See part II-C, *infra*.)

We do not feel a full reversal of these proceedings is required. Instead, we remand so the juvenile court may articulate which standard of proof it applied at the disposition hearing. If it in fact applied the "clear and convincing" standard, the disposition order may stand. If, on the other hand, it applied the lesser "preponderance of the evidence" standard, only then is a new disposition hearing required.

## C. *Denial of Request for Reunification Plan*

■ At the conclusion of the disposition hearing, the father requested the juvenile court to order a plan for reunification with his children. The trial court responded: "*My understanding of the law* is that reunification plans are *only made when there's a placement outside of either parent's home.* Since the children are with their mother, that would not be an appropriate order to make. That request will be denied." (Italics added.)

In the newly effective section 361.2 referred to above, procedures were set forth governing shifts of custody between parents. In this case, the court ordered the children placed with the mother subject to the supervision of the juvenile court. Section 361.2, subdivision (a)(2) provides, in part: "In such a case the court *may* order that reunification services be provided to the parent or guardian from whom the minor is being removed . . . ." Although a reunification plan is not required, the new statute contemplated that in this type of case, the juvenile court should have exercised its discretion as to whether or not one should be ordered. It is clear that the juvenile court was unaware of this change in the law.

## III. CONCLUSION

The jurisdictional findings in each of these matters are affirmed; the dispositional orders are reversed and remanded with directions that the court articulate the standard of proof applied at the disposition hearings. If the "clear and convincing" standard was applied, the disposition order may be reinstated. If the "preponderance of the evidence" standard was applied, a new disposition hearing shall be ordered. In either event, the court shall

exercise its discretion as to whether or not a reunification plan is appropriate.

Anderson, P. J., and Poché, J., concurred.

On June 19, 1988, the opinion was modified to read as printed above.