[Civ. No. 60589. Second Dist., Div. Two. Apr. 9, 1981.]

In re CHRISTINA L., a Minor.
LOS ANGELES COUNTY DEPARTMENT OF ADOPTIONS,
Plaintiff and Appellant, v.
WILLIAM L. et al., Defendants and Respondents.

## COUNSEL

John H. Larson, County Counsel, and Sterling Honea, Deputy County Counsel, for Plaintiff and Appellant.

Richard B. Lombardi, under appointment by the Court of Appeal, for Defendants and Respondents.

## OPINION

**BEACH, J.—**

### NATURE OF APPEAL:

Appeal from judgment of the superior court dismissing petition to declare minor free from natural parents' custody and control. Issues on appeal: (1) whether the superior court had jurisdiction to hear the petition, (2) whether the superior court should have treated the foster parents as parties to the proceeding, thus allowing them to be heard through counsel, (3) whether the superior court should have appointed separate counsel for the minor, and (4) whether the dismissal of the petition was an abuse of discretion. We reverse.

### BACKGROUND:

At the age of 10 months, the minor Christina L., born on January 25, 1976, was hospitalized for malnutrition. At the time, the minor weighed only some nine pounds. Following the minor's release from the hospital on November 29, 1976, she was placed in a foster home, where she has since remained. On January 3, 1977, the Juvenile Court of Los Angeles County declared the minor a dependent child of the court (Welf. & Inst. Code, § 300), and ordered custody of the minor taken from the parents and placed under the control of the department of public social services (DPSS).

Since its January 3, 1977, order, the juvenile court has held annual review hearings, as required under Welfare and Institutions Code section 366, to determine whether it should continue its jurisdiction over the minor. After each of those hearings, the juvenile court retained its jurisdiction over the minor.

On August 8, 1979, the department of adoptions filed a petition in the Superior Court of Los Angeles County to have the minor declared free from parental custody and control, pursuant to Civil Code section 232, subdivisions (a) (1) and (a) (7).[1] A hearing thereon was held on November 13, 1979. A summary of the testimony presented at that hearing follows:

Billie Gray, a social worker for DPSS, testified that in addition to Christina, three other children had been taken from the natural parents' custody and placed in foster homes but that they were returned to Mrs.

---

[1]The portions of Civil Code section 232 pertinent here, provides that:

"(a) An action may be brought for the purpose of having ... [a child] declared free *from the custody and control of either or both of his parents when such* [child] ... has been left by both of his parents ... in the care and custody of another for a period of six months ... without any provision for his support, or without communication from such parent or parents, with the intent on the part of such parent or parents to abandon such person. Such ... failure to provide, or failure to communicate shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him. If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents .... [¶] The fact that a child is in a foster care home, licensed under Chapter 3 (commencing with Section 1500) of Division 2 of the Health and Safety Code, shall not prevent a licensed adoption agency which is planning adoption placement for the child, from instituting, under this subdivision, an action to declare such child free from the custody and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel, and if there is no county counsel, the district attorney shall institute such action.... [¶] (7) Who had been cared for in one or more foster homes ... under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds by clear and convincing evidence that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to do the following: (i) Provide a home for the child; (ii) Provide care and control for the child; and (iii) Maintain an adequate parental relationship with the child. [¶] *Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period.* [¶] (b) *Institution of action* [¶] A licensed adoption agency may institute under this section, an action to declare a child, as described in this section, free from the custody and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel, or if there is no county counsel, the district attorney shall in a proper case institute such action."

L. in October 1978, and that the parents had not sought counseling as recommended.

Paul G., the foster parent, testified that Christina was placed with him and his wife in November 1976, following Christina's hospitalization for eight weeks, and that Christina was enrolled at a nursery school, where her teachers described her as "very intelligent" and doing "beautifully." He further testified that since Christina's placement with him and his wife, her parents visited her once or twice a month in the period February through June 1977, and thereafter saw her three or four times in October and November, and twice in December 1977. In 1978, they saw her twice in January and once in July. In 1979, they saw her once in the months of May, July and August.

Paul G. testified regarding those occasions when the natural parents would set up a date to visit Christina and then, without calling the foster parents, would not show up. He further testified that during Christina's stay at the foster home her parents brought her a gift two or three times, not necessarily on her birthday. He recalled one gift as a pair of pants and a top. Twice Christina's father gave her a dollar or less.

Gerda L., Christina's natural mother, testified she was unemployed and living on welfare in a two-bedroom apartment with three of her children, consisting of a five year old and twins of a year and a half. She had been separated from her husband since March 1978 but expected a reconciliation.

William L., Christina's natural father, testified he was earning $152 net a week at a salvage yard, he was living apart from his wife with two other persons whom he paid $70 a month for rent, and he had not been involved in counseling but would do so if he and his wife would get Christina back. He further testified he was not paying support for Christina, the minor involved here, but that he gave his wife "the money that she needs." When asked if he could give an approximate figure per month, he said he could not because he "bought her a car and stuff like that."

Alma G., the foster mother, testified that although she had told Christina's mother that Sunday afternoons were not convenient for visitation, she, Mrs. G., had never denied any visitation request on that ground.

Thereafter, the parents took the witness stand in their own behalf. Mrs. L. testified she did not visit Christina from June 28, 1977, to October 15, 1977, because the foster mother and the social worker refused to let her visit, saying the visits were inconvenient to the foster parents. She said she would seek marital counseling in the near future and explained she had not done so because she was involved in counseling with respect to Christina. As to Mr. L., he testified he wanted Christina home and did not want the foster parents to adopt Christina.

On rebuttal, county counsel asked Mr. G., the foster parent, about Mrs. L.'s testimony that she had visited Christina at the foster home on January 14, January 28, February 11, and February 25, 1978, dates not mentioned by Mr. G. earlier when he recited the dates of visitation. Mr. G. stated his records showed that on January 14, a visit had been set up but that the parents did not come; on January 28 Christina was sick and the foster parents called the social worker to cancel the mother's planned visit; on February 11, the mother had set up a visit for 9 a.m., but when she still had not arrived or called by that time, the foster parents left with Christina. The same happened on February 25.

In its judgment entered on January 16, 1980, the superior court found the evidence insufficient to sustain the petition, finding there had "clearly been no intent" on the part of either of Christina's parents to abandon her, and further finding that the parents "can provide for the needs of the minor." The superior court ordered the department of adoptions "to return the minor to the custody of her mother forthwith."

On February 5, 1980, DPSS, represented by county counsel, moved to vacate that portion of the judgment ordering the immediate return of Christina to her mother. DPSS argued that because its custody of the minor was based upon an order of the juvenile court, only that court could order the minor removed from foster care. The superior court denied the motion.

On February 20, 1980, the Juvenile Court of Los Angeles County found that because the matter had not been transferred to San Bernardino County as it had ordered on February 27, 1979, following its finding that the minor and the natural parents were at that time residing in San Bernardino County, it still had jurisdiction over the matter. The juvenile court further found that the Los Angeles County Superior Court's order of January 18, 1980 to have the minor immediately returned to her natural parents was "an order in a collateral proceeding

and therefor [*sic*], was not binding on the Juvenile Court." The juvenile court then, for purposes of its annual review hearing, appointed Dr. Lorna Forbes to interview the minor, her natural parents, and her foster parents to determine whether it would be in the minor's best interests to reunite her with her natural parents. On May 5, 1980, the juvenile court found it would be detrimental to have the minor returned to her natural parents, and ordered the minor to remain with the foster parents.

DISCUSSION:

1. *Superior Court Jurisdiction to Hear Civil Code Section 232 Petition*

■ Appellant DPSS contends the superior court was without jurisdiction to hear the Civil Code section 232 petition because the minor had already come under the jurisdiction of the juvenile court as a dependent child. In support, DPSS cites the following language from *People* v. *Sanchez* (1942) 21 Cal.2d 466, 471 [132 P.2d 810]: "It is inconsistent with the mode of operation required by the [Juvenile Court Law] to allow other departments of the court acting under the general authority of superior courts to act upon cases within the Juvenile Court Law over which the juvenile court is exercising its jurisdiction."

*Sanchez* is distinguishable from the present case. In *Sanchez*, the Superior Court of Los Angeles County, sitting as a juvenile court, had declared the minor a ward of the court and ordered him committed to the Preston School of Industry. There, he appeared to be suffering from an advanced rheumatic heart disease, resulting in his confinement to bed with no prospect of improvement. The director of institutions then filed an affidavit stating that because of physical disability the minor was unfit to profit from the school's training program, and recommending that he be returned to the superior court. Thereafter, the superior court, which was sitting as a criminal court and to which the case had not been remanded by the juvenile court, vacated the juvenile court's commitment to the school and ordered the minor sent to state prison. (*People* v. *Sanchez, supra*, 21 Cal.2d 466, 468-469, 472.) Thus, in *Sanchez* the superior court's action directly interfered with the juvenile court's jurisdiction over the ward. Here, on the other hand, we don't have a wardship or dependency proceeding but a proceeding to declare a child free from parental control. As this court (Div. Five) noted in *In re Shannon W.* (1977) 69 Cal.App.3d 956, 962 [138 Cal.Rptr. 432],

legislation enacted in 1961 removed proceedings to declare a child free from parental custody and control from juvenile court jurisdiction and placed them in the Civil Code (§ 232 et seq.). A proceeding to declare a child free from parental custody and control is different in nature and purpose from a wardship or dependency proceeding. The latter contemplates custody or care by juvenile court officers, whereas the former "is designed to sever the parental relationship as a first step in accomplishing the adoption of the child which, it is hoped, will make further juvenile court jurisdiction unnecessary." (*In re Shannon W., supra,* at p. 962.) A Civil Code section 232 proceeding thus does not conflict or interfere with the temporary custodial arrangements which the juvenile court may have made in the interests of the child. (*Ibid.*) We therefore reject the contention that the superior court had no jurisdiction over the Civil Code section 232 proceeding.

However, we also conclude that once the superior court had ruled on the petition to declare the minor free from parental custody and control, it was without jurisdiction to further order the immediate return of the minor to the parents. In so ordering, the superior court directly interfered with the juvenile court's dependency jurisdiction. As we noted earlier, there are distinct differences between a dependency proceeding and a proceeding to declare a child free from parental control. The latter proceeding may speedily lead to an adoption in which a parent's right to custody is lost permanently. "[T]he very essence of the proceeding is the complete and final legal termination of a relationship which is biological in nature and most personal in form. [Citations.] (*In re Angelia P.* (1981) 28 Cal.3d 908, 916 [171 Cal.Rptr. 637, 623 P.2d 198].) The court-ordered severance of parental ties in effect punishes the parents for their inadequacy. In contrast, a dependency proceeding can result only in a parent's loss of custody on a temporary or nonconclusive basis. (*In re Norma M.* (1975) 53 Cal.App.3d 344, 346 [125 Cal.Rptr. 721].) The juvenile court's control over the minor as a dependent of the court is less extensive than that of the actual parent. Its determination in a dependency proceeding is designed not only to protect the welfare of the minor but also to assist the parents in properly raising their own child. (*Matter of La Shonda B.* (1979) 95 Cal.App.3d 593, 599 [157 Cal.Rptr. 280].) In sum, the issue before the superior court was simply whether there should be a complete and permanent severance of parental custody. Not before that court was the issue of whether it would be in the minor's best interests that the juvenile court continue to monitor such interests, as it had done since November 1976.

In also deciding the latter issue, the superior court usurped the juvenile court's jurisdiction. (See *People* v. *Sanchez, supra*, 21 Cal.2d 466.)

2. *Duty of Trial Court to Allow Counsel for Foster Parents to Appear on Their Behalf*

■ Appellant argues that at the Civil Code section 232 proceeding the superior court should have allowed the foster parents to appear as *parties*, represented by counsel. In support, appellant cites *Adoption of R. R. R.* (1971) 18 Cal.App.3d 973, 986-987 [96 Cal.Rptr. 308]. That case involved an adoption proceeding brought by the child's paternal grandmother, who alleged the child's parents had abandoned the child. The superior court, finding that the mother had not abandoned the child but that the father had, denied the adoption petition. On appeal, the father contended the evidence did not sustain the finding he had abandoned his daughter so she should be declared free of his custody and control. The reviewing court reversed after concluding that the superior court erred in not treating the father, who had been called as a witness, as a party to the proceedings, with the right to be represented by counsel. (*Ibid.*) That case is simply not applicable to the situation at bench. Here, the minor's natural parents, unlike the situation in *Adoption of R. R. R., supra*, 18 Cal.App.3d 973, were properly treated as parties to the proceedings, where they were represented by counsel.

Conceivably, there are situations in which de facto parents or foster parents should be permitted to appear as parties to assert their own interest with regard to the custody of a child. Thus, in *Katzoff* v. *Superior Court* (1976) 54 Cal.App.3d 1079 [127 Cal.Rptr. 178], the court held that where DPSS had petitioned to remove the child from its foster home the foster parents should be permitted to appear as parties. Contrary to the situation in *Katzoff*, this case did not involve conflicting interests between DPSS and the foster parents, who wanted to adopt the minor. Here, both favored removal of the minor from the custody and control of her natural parents. We therefore reject appellant DPSS's contention that the superior court committed reversible error in not treating the foster parents as parties, with the right of representation by counsel.

3. *Appointment of Counsel for Minor*

Citing *In re Richard E.* (1978) 21 Cal.3d 349 [146 Cal.Rptr. 604, 579 P.2d 495], appellant contends the superior court committed revers-

ible error in not appointing separate counsel to represent the minor's interests.

In *In re Richard E., supra*, the California Supreme Court stated: "[W]hen the court finds a child has separate interests not protected in the contest between parents and a petitioner, the court must exercise its discretion by appointing separate counsel." (*Id.* at p. 354.) Here, at the commencement of the Civil Code section 232 proceeding, the superior court specifically stated that it perceived no conflict between the petitioning agency and the child, and that county counsel could adequately represent the child's interests, thus rendering appointment of separate counsel for the child unnecessary.

■ We agree with the superior court that ordinarily where, as here, the proceedings are instituted by a public agency on behalf of a child that has been a dependent of the juvenile court for a number of years, counsel for the public agency can adequately represent the child's interests. (*In re Heidi T.* (1978) 87 Cal.App.3d 864, 876 [151 Cal.Rptr. 263].) ■ However, our review of the evidence presented in this case leads us to believe that in this particular instance county counsel did not adequately represent the child's interests, as we shall discuss below.

■ Because parenting is a fundamental right, it is disturbed only in extreme cases of neglect or abandonment. (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514]; *In re T. M. R.* (1974) 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 692].) The parental right or preference doctrine originated with the concept that a parent's right in his child was like that of a property owner in his chattel. (*In re Angelia P., supra*, 28 Cal.3d 908, 916; *In re B. G.* (1974) 11 Cal.3d 679, 694 [114 Cal.Rptr. 444, 523 P.2d 244].) This in turn led to the assumption that the interests of the parents, not the child, were of paramount consideration. Parental rights, however, are not absolute. In recent years, the focus has been on the child's interests. (*In re Angelia P., supra*, at p. 916.) Thus, our own Legislature in 1965 enacted legislation requiring consideration of "the interests and welfare of the child" at proceedings to permanently sever the parent/child relationship. (Civ. Code, § 232.5.)

As the California Supreme Court noted in *In re Angelia P., supra*, 28 Cal.3d 908, 917: "In theory, the evolving 'parental preference' and

'child's best interests' standards do not necessarily conflict. As one commentator has noted, 'In general, children's needs are best met by helping parents achieve their interests. In some situations, however, there may be a conflict of interests.... In these situations, the legal system should protect the child's interests. Not only is the child a helpless party but the parents should suffer the consequences of their inadequacy rather than the child.' [Citations.]"

In the case at bench the minor's interests were completely overlooked. Conspicuously absent from the arguments presented at the hearing was any expression of concern about the well-being of the minor. For example, nothing was said as to how the minor, then almost four years old, might be affected by a permanent removal from the home where they had cared for her since she was ten months old. During a child's very early years, many basic attitudes and capacities are developed, and ties are formed to the adults present in the child's life. Often such ties can be broken only by inviting emotional disaster. (*In re Rose G.* (1976) 57 Cal.App.3d 406, 425 [129 Cal.Rptr. 338].) Here, no evidence was presented on the detrimental effect, if any, upon the minor if her natural parents' custody were to be restored and the minor removed from the foster parents' home, where she had spent her formative years. On appeal, county counsel concedes that "Christina's interests were not properly represented," but argues that had the superior court appointed separate counsel for the minor, her interests would have been fully protected. As we noted earlier, at the outset there was no indication of a conflict between the petitioning agency and the child, and appointment of separate counsel thus did not appear called for. We are given no reasons as to why county counsel did not present or could not have presented evidence of the child's best interests in this matter.

Because the record shows that the minor's interests were inadequately represented at the Civil Code section 232 proceeding, we reverse the matter.[2] This disposition makes it unnecessary for us to reach appellant's contention that the superior court abused its discretion in dismissing the petition seeking to have the minor declared free from parental control and custody.

---

[2]Upon rehearing, separate counsel for the minor would be required only if the superior court finds that because of conflicting interests between the petitioning agency and the minor the latter's interests can be protected only by having separate counsel for the minor appointed.

The judgment is reversed.

Fleming, Acting P. J., and Compton, J., concurred.