[No. G005008. Fourth Dist., Div. Three. Apr. 10, 1989.]

In re RANDI D. et al., Minors.
ROGER B., Petitioner and Respondent, v.
RANDALL D., Objector and Appellant.

**COUNSEL**

Kenneth M. Stern, under appointment by the Court of Appeal, for Objector and Appellant.

No appearance for Petitioner and Respondent.

Thomas F. Coleman, under appointment by the Court of Appeal, for Minors.

---

## OPINION

SCOVILLE, P. J.—Randall, the natural father of minors Randi D. and Shawn D., appeals from a judgment freeing said minors from his custody and control. (Civ. Code, § 232.) The action to sever Randall's parental rights was filed by the children's proposed stepfather (Roger) and alleged Roger had filed a petition for stepparent adoption.

After the appeal was filed, Randall sought this court's permission to file a supplemental brief and to present evidence regarding events occurring after entry of judgment on December 8, 1986. We allowed the filing of the supplemental brief and construed the motion to present additional evidence as a motion to take judicial notice of specified superior court records, copies of which were attached to the supplemental brief. (Evid. Code, § 452, subd. (d).) Those documents include, (1) a request for dismissal showing Roger's petitions for stepparent adoption of minors were dismissed on July 13, 1987; (2) a judgment of dissolution showing that the marriage of Roger and minors' natural mother (Sharon) was terminated as of November 27, 1987.

Based on these new developments, Randall asks us to set aside the judgment severing his parental relationship to minors. He argues the only purpose behind Civil Code section 232 proceedings is to "facilitate the adoption of a child." He argues the judgment in this case was granted in contemplation of the proposed stepparent adoption and now that there is to be no such adoption his status as natural father should be restored.

▪ The general rule is that matters occurring after the entry of judgment are not reviewable because an appeal reviews only the correctness of the judgment as of the time of its rendition. (*In re James V.* (1979) 90 Cal.App.3d 300, 304 [153 Cal.Rptr. 334].) Randall relies on the concurring opinion of Chief Justice Bird in *In re Elise K.* (1982) 33 Cal.3d 138, 139-151 [187 Cal.Rptr. 483, 654 P.2d 253]. In that case, while an appeal was pending from a judgment terminating a natural mother's parental rights in order to free her child for a proposed adoption, the child's adoptive placement had to be terminated and the child was returned to foster care. There the parties stipulated the judgment could be reversed and the matter remanded to the trial court for further proceedings in light of subsequent evidence that

the adoption had fallen through and the child, because of her age (14 years), was unlikely to be adopted.

Chief Justice Bird's concurring opinion appears to be a proposed guide in situations where the parties do not agree to reverse the judgment. She suggests an appellate court should take additional evidence under Code of Civil Procedure section 909 "if compelling new circumstances arise which undermine the basis for a section 232 order during a parent's appeal from such an order . . . ." (*In re Elise K., supra,* 33 Cal.3d at p. 150.) Chief Justice Bird acknowledges the general rule, that matters occurring after judgment are immaterial on appeal, but urges "[a] narrow exception to the general rule" where, as in *Elise K.,* the trial court's order has, in effect, left a child parentless. (*Ibid.*)

The case before us is very different from that considered by the court in *Elise K.*[1] Here the minors have been and remain in the custody of Sharon, their natural mother, since the parents' separation in 1979. It is true that Civil Code section 232 proceedings were commenced by Roger when Randall refused to consent to Roger's proposed stepparent adoption of minors. But the stepparent adoption proceeding is entirely separate from the Civil Code section 232 proceeding, and failure of the adoption does not take away the factual basis for the decision to terminate Randall's parental rights.

Civil Code section 232, subdivision (a)(1) specifically provides in part: "(a) An action may be brought for the purpose of having any child under the age of 18 years declared free from the custody and control of either or both of his or her parents when the child comes within *any* of the following descriptions: [¶] (1) The child has been left . . . by one parent in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent . . . with the intent on the part of the parent . . . to abandon the child." (Italics added.) The code section clearly contemplates severance of the parental right in such a situation without reference to whether or not adoption proceedings are pending.[2]

Ultimately, the court in deciding a petition under Civil Code section 232 must determine whether it would be detrimental to minors to continue the parental relationship. Here we conclude that the trial court did so and the judgment should be affirmed even in light of the subsequent events.

---

[1] Among other things, far from agreeing the judgment should be reversed, counsel for minors here urges that we sustain the judgment in the best interest of the children.

[2] The cases relied on by Randall, including *Elise K.,* are all cases in which the minor was in foster care at the time of the severance proceeding, and adoption was the ultimate goal for the child. (See Civ. Code, § 232.6.)

■ The trial court's determination that there was clear and convincing evidence Randall had left minors in Sharon's care and custody for a period in excess of a year without communicating with minors and without making any provision for their support with the intent to abandon the minors is supported by the record.[3] Dissolution of Randall and Sharon's marriage was entered August 13, 1979, when minors were approximately three and two years old. Testimony at trial indicated Sharon was given custody of minors and they had lived continuously with her through the day of trial, more than seven years from the date of dissolution. Sharon last received child support of any kind from Randall in May 1980. Randall exercised visitation rights as to the minors immediately after the divorce in 1979, but thereafter he never visited the children. In April or May 1985 he went to two or three baseball games minors were participating in. Other than the baseball games in 1985, Randall admitted he had no contact whatsoever with his son in the five years from 1982 through 1986. He believed he may have seen his daughter "one or two" times in 1982, but admitted having no other contact with her, other than the 1985 baseball games, from 1981 to 1986.

Randall testified he was in police or prison custody in 1985 and 1986.[4] He admitted he had sent no cards or presents to either child and had made no telephone calls to either of them from 1981 to the date of the hearing. He was in prison from January 1986 through the day of trial. Although he had writing materials available to him in prison he admitted never writing to either child.

Civil Code section 232, subdivision (a)(1), also provides, "The . . . failure to provide support, or failure to communicate shall be presumptive evidence of the intent to abandon. ■ If the parent [has] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent . . . ." As was said in *In re Brittany H.* (1988) 198 Cal.App.3d 533, 550 [243 Cal.Rptr. 763], " '[T]he question whether such intent to abandon exists and whether it existed for the statutory period is a question of fact for the trial court to be determined upon all the facts and circumstances of the case.' [Citations.]"

---

[3] The trial court's written findings include the finding, required by Civil Code section 4600, that an award of custody to Randall would be detrimental to minors. (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 495-496 [146 Cal.Rptr. 623, 579 P.2d 514]; *In re B.G.* (1974) 11 Cal.3d 679, 698-699 [114 Cal.Rptr. 444, 523 P.2d 244].)

[4] He had been released on bail in March 1985 and was not actually sent to prison until January 1986. The probation officer's report filed in connection with these proceedings indicates Randall suffered a felony conviction for grand theft in March 1982. He was given five years formal probation and ordered to pay restitution of $199,210. In November 1985 he was convicted of conspiracy to sell cocaine and possession of cocaine for sale. He was sentenced to three years and eight months in prison on the probation violation and a one-year consecutive term for the narcotics violations. Randall was scheduled to be released from prison in September or October 1987.

Randall contends a finding of abandonment could not be predicated upon his failure to support his children because there was no evidence he was *able* to support them. (*Guardianship of Pankey* (1974) 38 Cal.App.3d 919, 932 [113 Cal.Rptr. 858].) However, as was said in *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 605 [207 Cal.Rptr. 728], "Although a parent's failure to contribute to his child's support absent demand does not necessarily show abandonment, such failure coupled with failure to communicate, may do so. [Citation.]" Here the evidence of abandonment was clear. Randall made no attempt to communicate or take any interest in his children for approximately five years.

■ Randall also contends he should have been advised of the provisions of Civil Code section 224 "at the outset of the stepparent adoption proceeding," and that failure to so advise him resulted in a deprivation of due process sufficient to mandate reversal of the judgment. Civil Code section 224 provides, in pertinent part, that consent of a parent to an adoption of his or her child is unnecessary when the parental relationship has been severed, pursuant to Civil Code section 232 or where one parent has legal custody of the child and the other parent "willfully fails to communicate with and to pay for the care, support, and education of the child when able to do so" for a period of one year. Randall argues, "With such knowledge [he] could have protected, from the start of the stepparent adoption proceeding, his rights by communicating with his children . . . ." Rarely have we heard a more callous argument. What love, parental instinct, or even basic decency could not supply, that is, interest in his children, would have miraculously appeared if only Randall had known he could prevent the stepparent adoption (and a modicum of security for his children) by communicating with them. To cloak this argument in the trappings of a constitutional right is particularly offensive. Not surprisingly, Randall cites no authority to support this contention. Suffice it to say, the stepparent adoption proceedings were brought by the proposed stepparent, not the state, and were entirely separate proceedings from those we consider here. The alleged shortcomings of the adoption proceedings are not cognizable here.

The last answer is also applicable to Randall's argument concerning the alleged failure to provide him with an attorney in the stepparent adoption proceedings. That proceeding is not before us. ■ Any complaint about nonrepresentation in the adoption proceeding was not raised in the court below; it may not be raised for the first time on appeal. (*In re Marriage of Fuller* (1985) 163 Cal.App.3d 1070, 1076 [210 Cal.Rptr. 73]; *Fleming* v. *Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 43 [206 Cal.Rptr. 313].) Randall was represented by counsel here and the stepparent adoption proceeding has been terminated. The matter appears to be moot.

Randall contends he was entitled to some kind of rehabilitation or reunification plan prior to severance of his parental relationship. He made no

such request at the trial level. ■ Whether reunification services are to be ordered and termination proceedings delayed until the results of reunification attempts are evaluated lies within the sound discretion of the trial court. (*In re Angelia P.* (1981) 28 Cal.3d 908, 923 [171 Cal.Rptr. 637, 623 P.2d 198]; *In re Clarence I.* (1986) 180 Cal.App.3d 279, 283 [225 Cal.Rptr. 466].) No abuse of discretion is shown here.

■ Finally, Randall contends the trial court is required to make express findings of fact that an abandonment occurred, and the judgment must be reversed in the absence of such a finding. One case has so held. That holding does not appear to have been followed by any other case, nor has it been disagreed with. In *In re Rose G.* (1976) 57 Cal.App.3d 406 [129 Cal.Rptr. 338] the court held findings of fact and conclusions of law were required in Civil Code section 232 proceedings when they were requested by one of the parties. In listing the findings which would be necessary to support a termination of parental rights, the court stated that in that particular case the intent to abandon on the part of the natural parents was a crucial factual finding. The court determined that a finding of intent to abandon should be express and should not be implied from the judgment. The court stated, "We hold that such a finding must be an express finding in a Civil Code section 232 proceeding, especially since a parent is being deprived of custody of a child, unless findings are waived." (*Id.,* at p. 417.)

Here, Randall did not request findings, or more properly now, a statement of decision. Hence, the holding of *Rose G.* is inapplicable here.

The judgment is affirmed.

Moore, J., concurred.

**WALLIN, J.,** Dissenting—I agree with the majority's conclusion we should consider the new developments posttrial in reaching our decision on this appeal. I respectfully disagree, however, with its conclusion those developments lead to an affirmance of the trial court decision.

Roger B. filed identical stepparent adoption petitions to adopt Shawn and Randi, the children of his then wife, Sharon B., from her former marriage to appellant Randall D. Roger B. and Sharon B. were then living happily with the children and the trial court appeared likely to approve the adoption. But the adoption proceedings were stymied when Randall D., the natural father, refused his consent. Roger B. then filed identical petitions to declare Shawn and Randi free from the custody and control of Randall D.

Without reiterating the details outlined in the majority opinion, it is clear from the record that Randall D. was anything but a model father. He neglected his children and did not provide for their support. The petitions

declaring the children free from the custody of Randall D. were granted. The decision was supported by substantial evidence, the claimed trial court errors are insubstantial, and, without more, the judgments would unquestionably be affirmed.

But there is much more. Since then we have been informed that Roger B. is no longer proceeding with the petitions for stepparent adoption because he and Sharon B. are dissolving their marriage. He has not appeared in this court, has dismissed the stepparent adoption petitions, and is no longer an interested party in this matter.

Nevertheless, the majority opinion refers to him as the "petitioner" and affirms the judgment on his petitions, even though there is now no petitioner. The majority reaches this result by accepting the unsworn hearsay statements of counsel that the natural mother, Sharon B., and the children wish to have the freedom petition judgments affirmed. This result is contrary to accepted appellate practice, the procedure followed by the Supreme Court in *In re Elise K.* (1982) 33 Cal.3d 138 [187 Cal.Rptr. 483, 654 P.2d 253], and logic.

Appellate courts have the power to take evidence on appeal and consider facts arising after the trial court judgment (Civ. Code, § 909). It is a power rarely exercised, however, because it does not harmonize with the function of appellate review. When an appellate court does accept evidence, it should, at a minimum, follow the standards for admission of evidence required of a trial court. In this case we can take judicial notice of the dissolution of the marriage of Roger B. and Sharon B., Roger B.'s dismissal of the stepparent adoption proceedings, his abandonment of the freedom petitions at issue here, and his nonappearance in this appeal. Any trial court could do likewise. We should not, however, accept the unsworn hearsay statements of counsel as to the current wishes of the natural mother, Sharon B., and the two children. This is particularly true when, as in this case, the new information significantly alters the circumstances upon which the trial court acted. At a minimum this new information should be presented in admissible form to the trial court for a determination of its effect on the judgment. Substituting ourselves for the trial court usurps its function and also denies the losing party the opportunity to appeal our factual determinations.

The freedom petitions were only filed in this case to facilitate Roger B.'s stepparent adoption. In *Elise K.* the Supreme Court unanimously *reversed* a trial court judgment declaring a child free from the care and custody of her parent after learning that the child was no longer adoptable. While it is true the reversal was by stipulation, the result suggests the court unanimously believed termination of the adoption proceedings should also result in

termination—or at least reconsideration—of the judgment on the freedom petition. (See *In re Elise K., supra,* 33 Cal.3d at pp. 150-151.) The majority reaches the opposite conclusion when it affirms the judgment in this case. As explained in a concurring opinion, "The termination of parental rights contemplated by section 232 is the ultimate sanction envisioned by the Legislature. It represents the total and irrevocable severance of the bond between parent and child. (§§ 232.6, 238.) The child's emotional relationships with his or her natural parent and siblings are cut off. Any right to parental support or to an inheritance from biological family members is terminated. The parents, in turn, lose the right to the companionship, care, and custody—and the possibility of ever regaining visitation rights or custody—of their offspring. [¶] The 'fundamental interests' which are at stake are 'ranked among the most basic of civil rights . . . .' [Citations.] Consequently, the parent-child relationship may be terminated under section 232 'only in extreme cases of persons acting in a fashion incompatible with parenthood.' [Citation.] [¶] Other provisions of statutory law permit a child to be taken from the custody of a deficient parent without extinguishing the parent-child relationship or terminating all parental rights. (See especially Welf. & Inst. Code., § 300.) Thus, resort to section 232 proceedings is generally inappropriate unless, inter alia, the state intends—and is reasonably likely—to provide the child with a satisfactory long-term replacement for the otherwise permanent parental relationship that is being terminated. In short, a termination of parental rights is normally appropriate only when adoption is realistically contemplated. [¶] Case law, legislative history, and statutory law all confirm this obvious conclusion. The courts of this state have long recognized that the 'purpose of [a section 232 action] is to facilitate adoption of the minor child.' [Citation.] Indeed, the statutory provisions regarding the termination of parental rights were originally transferred from the Juvenile Court Law to the Civil Code for precisely this reason: 'What is contemplated by court action under [the Juvenile Court Law predecessor to section 232] is not continuing guidance and supervision by a governmental agency, but freeing the child for adoption by a private person. This is essentially an adoption problem and, therefore, should be handled by the civil court handling adoptions.' [Citations.] [¶] In 1980, the Legislature once again made this point with unmistakable clarity. It enacted section 232.6, which provides in pertinent part that '[t]he purpose of this chapter [dealing with the termination of parental rights] is to serve the welfare and best interests of a child *by providing the stability and security of an adoptive home* when those conditions are otherwise missing from his or her life.'" (*In re Elise K., supra,* 33 Cal.3d at pp. 146, 147, fns. omitted (conc. opn. of Bird, C. J.).)

Finally affirmance of this judgment defies logic. How can we affirm a judgment on these freedom petitions now that there is no petitioner? How

can we terminate parental rights and obligations under a statute which exists for the purpose of facilitating adoption when we know there is to be no adoption? The majority opinion reaches this result by confusing a freedom proceeding ancillary to an adoption with juvenile court wardship proceedings. As the previous quote from *Elise K.* states, the two are very different. "The action to have a minor declared free from the custody and control of his parents [(Civ. Code, § 232)] is distinct in nature and purpose from the Juvenile Court proceeding to declare a minor a ward of the court. [Civil Code section 232] deals with a *neglected* rather than a delinquent child; it is not designed to affect *actual custody* because the parents in nearly all cases have either abandoned the child or have been deprived of its custody; and it does not contemplate custody or care by Juvenile Court officers, but rather seeks to pave the way for *adoption* or other normal custody arrangements by eliminating the rights of the erring parents." (6 Witkin, Summary of Cal. Law (8th ed.) Parent and Child, § 106, p. 4628.) Numerous decisions agree with Witkin's comment that the purpose of Civil Code section 232 is to facilitate an adoption. (See *In re Christina L.* (1981) 118 Cal.App.3d 737, 744-745 [173 Cal.Rptr. 722]; *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849, 854-855 [146 Cal.Rptr. 26]; *In re Shannon W.* (1977) 69 Cal.App.3d 956, 961-962 [138 Cal.Rptr. 432]; and *In re Eugene W.* (1972) 29 Cal.App.3d 623, 628-629 [105 Cal.Rptr. 736].) Today's decision stands alone for the contrary proposition that a freedom petition filed to facilitate an adoption survives despite the withdrawal of the petition and termination of the adoption.

I would reverse the judgment.

Appellant's petition for review by the Supreme Court was denied July 20, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.