Filed 9/18/13  In re K.O. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

|  |  |
|---|---|
| In re K.O., a Person Coming Under the Juvenile Court Law. | |
| L.B. et al., | F066933 |
| Petitioners and Respondents, | (Super. Ct. No. 11A0017) |
| v. | |
| A.B., | **OPINION** |
| Objector and Appellant. | |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kings County.  James LaPorte, Judge.

Mary R. Williams, under appointment by the Court of Appeal, for Objector and Appellant.

Catherine Campbell for Petitioners and Respondents.

-ooOoo-

A.B., mother, appeals from a judgment granting a petition, pursuant to Family Code section 7822,[1] declaring her daughter, K., free from her custody and control.  The

---

[*]       Before Levy, Acting P.J., Franson, J., and Peña, J.

petition was brought by Loretta, mother's mother and K.'s grandmother, and Angel, Loretta's husband. The family court granted the petition to terminate mother's parental rights. In its order, the family court also granted the petition to terminate K.'s father's parental rights.[2]

Mother contends there is insufficient evidence to support the family court's findings. She also contends that the family court failed to comply with the Indian Child Welfare Act (ICWA; 25 U.S.C., § 1901 et seq.). We agree with her latter contention and reverse and remand for the sole purpose of compliance with the ICWA. In all other respects, the order terminating mother's parental rights is affirmed.

## FACTUAL AND PROCEDURAL SUMMARY

K. was born in January of 2007. K. came to live with Loretta in February of 2009 when mother said she could no longer afford to take care of her. Mother consented to Loretta having guardianship of K. According to mother, her desire was to one day provide for K., but she agreed with the guardianship as a way for her to better provide for K. When guardianship proceedings started, father's whereabouts were unknown, but at some point, he was located and notified of the proceedings. Guardianship was ordered July 27, 2009.

A guardianship status report filed in May of 2010, Loretta reported that mother visited K. once a week for a few hours. Angel testified that, when mother did visit in 2009 and 2010, she often slept during visits.

By May of 2011, in a subsequent guardianship status report, Loretta reported that mother was visiting "1 p/mos" up to three hours. According to the report, mother had taken no "meaningful steps to stabilize her life." She had lost a "good job," was

---

[1]    All further statutory references are to the Family Code unless otherwise noted.

[2]    K.'s father, J.O., is not a party to this appeal.

2.

employed at a fast food restaurant, had been evicted, and was planning to live in her car. Loretta expressed a desire to adopt K.

In August of 2012, Loretta and Angel filed this petition to free K. from her mother and father's custody and control, so that they could adopt her. At the hearing on the petition, Angel testified that he and Loretta originally agreed to take K. to protect her from becoming a ward of the state. They subsequently decided to adopt her and were trying to terminate mother and father's parental rights because they wanted to provide K. with stability, consistency and care; if they were able to adopt her, Angel's military benefits would protect K.

Loretta testified that, at the beginning of the guardianship, Loretta and mother agreed to coordinate their respective work schedules so mother could visit K. But since then mother had lost two jobs and had been homeless, and she was never able to provide a stable environment for K. Loretta did not ask mother to help financially with K., and mother never volunteered any assistance.

Loretta testified that she had not known where mother was living since January of 2011. Mother often did not show for visits. During the fall of 2011, mother called to say she was coming over on October 2 and October 9, 2011, but did not show either of those days. She did come over on October 10, 2011, for one and one-half hours to visit and asked to borrow $10. On October 31, 2011, mother came over from 6:00 to 8:15 to take K. trick-or-treating.

As for 2012, Mother texted Loretta on August 7, 2012, to say that she would stop by the following day from 6:00 to 7:30. That was the first and only contact mother had with K. in 2012. Loretta testified that she could count "on one hand," the number of items mother purchased for K. since she had been with her: a sundress someone made for her, a Barbie doll, a bear from Starbucks where mother worked at the time, and a "wind catcher."

3.

Angel testified that there were a number of times when K. would get a chair and sit out by the garage and wait for her mother to come, and be then disappointed when she did not come. Even after Loretta and Angel told mother that they hoped to adopt K., mother still did not initiate visitation with K. Angel testified that they never told mother she was not allowed to see K., only that they asked her to call first.

Mother testified that she visited K. "a couple of times" between August of 2011 and August of 2012, and "one or two" times during the first eight months of 2012. Mother claimed she called Loretta to make arrangements to visit about ten times, but her phone calls were not returned. Mother did not have a stable phone number. According to mother, on one occasion, she went to Loretta and Angel's house and wanted to park her car, which contained her belongings because she was homeless, in their driveway. Her brother locked her out of the house and would not let her in. Mother stated she was never given a time frame by Loretta in which she needed to "get [her] life together" for Loretta to return K. to her. But at the time of trial, she conceded that she was not yet ready for her return. She was still unemployed and staying with friends. Father never visited or paid any support.

The December 10, 2012, investigator's report stated that K. remembered her mother by name, but did not remember when she last saw her. She was too young to understand the purpose of an adoption or the meaning of the court proceedings. K. seemed comfortable living with Loretta and Angel and called them "momma" and "poppa." In the investigator's opinion, it was appropriate to terminate father and mother's parental rights under section 7822, subdivision (a)(3).[3] According to the

---

[3] Section 7822, subdivision (a)(3) governs when one parent has left the child in the custody and care of the other parent for a period of one year; section 7822, subdivision (a)(2) governs when the child has been left by one or both parents in the care and custody of another person for six months. While section 7822, subdivision (a)(2) is more applicable here, there is no prejudicial harm in referencing the incorrect subdivision as

4.

investigator, mother had had "over three years" in which to become a stable parent and had not done so. The investigator recommended that the petition be granted because Loretta and Angel were willing to ensure that K.'s physical, educational, and emotional needs were a priority and would be met in their home.

The family court found that father had not supported or contacted K. for more than a year and that, pursuant to section 7822, he evidenced an intent to abandon the child. The family court granted the petition to free K. from father's care, custody or control and his parental rights were terminated.

The family court also found that mother had not supported K. for a one year period and that beginning in January of 2012, "mother only visited the child on a token basis" and the intent to abandon her had been proven within the meaning of section 7822, subdivision (a)(2). The petition to free K. from mother's care, custody and control was granted and mother's parental rights terminated.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE TO SUPPORT SECTION 7822 FINDING

Mother challenges the sufficiency of the evidence to support the family court's finding under section 7822 that she "left" K. in Loretta's care and custody with the intent to abandon her. Instead, she claims she only left K. with Loretta until she was able to adequately care for her, and in the meantime, she provided for her as she could and communicated with her as Loretta and Angel allowed. We disagree.

*Applicable Law*

"Section 7800 et seq. governs proceedings to have a child declared free from a parent's custody and control. The purpose of such proceedings is to promote the child's best interest 'by providing the stability and security of an adoptive home.' (§ 7800.) The

---

the time frame sufficient for section 7822, subdivision (a)(2) is six months less than that of section 7822, subdivision (a)(3).

statute is to 'be liberally construed to serve and protect the interests and welfare of the child.' (§ 7801.)" (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1009-1010.)

The court may declare a child free from parental custody and control if the parent has abandoned the child. (§§ 7820, 7822.) As applicable here, abandonment occurs when the child has been left by the sole parent in the care and custody of another person for a period of six months without any provision for the child's support, or without communication from the parent, with the intent to abandon the child. (§ 7822, subd. (a)(2).)

Failure to communicate or provide support "is presumptive evidence of the intent to abandon." (§ 7822, subd. (b).) To overcome the statutory presumption, the parent must make more than token efforts to support or communicate with the child. (*Ibid.* ["If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent"]; *In re B.J.B.* (1986) 185 Cal.App.3d 1201, 1212.)[4] Intent to abandon may be found on the basis of an objective measurement of conduct, as opposed to stated desire. (*In re B.J.B., supra,* at p. 1212.) The court may consider the frequency with which the parent tried to communicate with the child, the genuineness of the effort under all the circumstances, and the quality of the communication that occurred. (*Ibid.*; *People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.) "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 68.)

---

**4** *In re B.J.B., supra,* 185 Cal.App.3d 1201 construed former Civil Code, section 232, Family Code section 7822's predecessor statute, as do other pre-1994 cases in this opinion.

*Standard of Review*

We apply a substantial evidence standard of review to a trial court's finding under section 7822. (*In re Amy A., supra,* 132 Cal.App.4th at p. 67.) "Although a trial court must make such findings based on clear and convincing evidence (§ 7821), this standard of proof '"is for the guidance of the trial court only; on review, our function is limited to a determination whether substantial evidence exists to support the conclusions reached by the trial court in utilizing the appropriate standard."' [Citation.] Under the substantial evidence standard of review, '"[a]ll conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences must be indulged to uphold the judgment."' [Citation.]" (*Adoption of Allison C., supra,* 164 Cal.App.4th at pp. 1010-1011, fn. omitted.) All evidence most favorable to the respondent must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. (*In re Gano* (1958) 160 Cal.App.2d 700, 705.) "Abandonment and intent '"are questions of fact for the trial [court] …. [Its] decision, when supported by substantial evidence, is binding upon the reviewing court. An appellate court is not empowered to disturb a decree adjudging that a minor is an abandoned child if the evidence is legally sufficient to support the finding of fact as to the abandonment [citations]."' [Citation.] 'The appellant has the burden of showing the finding or order is not supported by substantial evidence.' [Citation.]" (*Adoption of Allison C., supra,* at p. 1011.)

The presumption regarding the intent to abandon is a presumption affecting the burden of producing evidence. (*In re Rose G.* (1976) 57 Cal.App.3d 406, 419.) The presumption "may be overcome by opposing evidence … and the question whether such intent to abandon exists and whether it has existed for the statutory period is a question of fact for the trial court, to be determined upon all the facts and circumstances of the case. [Citation.] (*In re Neal* (1968) 265 Cal.App.2d 482, 488.)

*Analysis*

In determining the threshold issue of whether a parent has "left" his or her child with another person, the focus is "on the voluntary nature of a parent's abandonment …" (*In re Amy A., supra,* 132 Cal.App.4th 63, 69; *In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 504.) "[A] parent will not be found to have voluntarily left a child in the care and custody of another where the child is effectively 'taken' from the parent by court order [citation]; however, the parent's later voluntary inaction may constitute a leaving with intent to abandon the child [citation]." (*In re Marriage of Jill & Victor D., supra,* at p. 504.) Thus, nonaction in the face of a judicial custody order may result in a finding that the parent "voluntarily surrendered" his or her parental role. (*In re Amy A., supra,* at pp. 68-69; accord *In re Jack H.* (1980) 106 Cal.App.3d 257, 264; *In re Jacqueline H.* (1979) 94 Cal.App.3d 808, 815-816.)

Here, there is no question that K. had been in Loretta's care since February of 2009 and in her guardianship shortly thereafter. But mother argues that her actions agreeing to the guardianship did not demonstrate any intent to abandon K., but instead that she made provisions for K.'s care and support by agreeing to let Loretta take guardianship until mother could establish herself. As argued by mother, in agreeing to guardianship, she was not deserting K. or seeking to sever her parental relationship but "seeking to provide K[.] with a better level of care than [she] was able to provide at that time."

Mother relies on *Adoption of R.R.R.* (1971) 18 Cal.App.3d 973, for the proposition that "'mere acquiescence in support by others'" cannot prove an intent to abandon, or that "'the forfeiture of parental rights [cannot] be decreed against a parent who has merely acquiesced in the support of the child by other relatives. [Citations.]'" (*Id.* at p. 981.) In *Adoption of R.R.R.,* the trial court denied the grandparents' petition to adopt, a decision affirmed by the Court of Appeal, which found that that when a parent felt constrained by circumstances to give up custody temporarily in order to act in the child's best interest

8.

and make provision for the child, no abandonment can be found. (*Id.* at p. 981.) The appellate court noted that mother had only failed to provide for her daughter because "on the one hand, no demand had been made upon her for such support and on other occasions she was without the wherewithal to provide such support; that she had not neglected her daughter because her relatives had voluntarily undertaken to provide for her care and support." (*Id.* at p. 984.) But the court also noted that mother had not failed to communicate with her daughter and that she had been rehabilitated. The Court in *Adoption of R.R.R.* was obligated to uphold the trial court's decision under the standard rules governing appellate review and could not reweigh the evidence, which is the same standard we must use here.

Mother's argument that she never "left" K. in what amounted to abandonment must fail. "In determining the threshold issue of whether a parent has 'left' his or her child, the focus of the law is 'on the voluntary nature of a parent's abandonment of the parental role rather than on *physical* desertion by the parent.' [Citations.] [¶]…[¶] Numerous appellate decisions have long agreed that the leaving-with-intent-to-abandon-the-child requirement of section 7822 can be established by evidence of a parent's voluntary inaction after an order granting primary care and custody to the other parent. [Citations.]" (*In re Marriage of Jill & Victor D., supra,* 185 Cal.App.4th at p. 504.)

Here, while the guardianship was court ordered, mother consented to it. Substantial evidence supports the trial court's implied finding that this leaving amounted to an abandonment because, over time, mother made no effort to either support or have a relationship with K. Mother's inactions after the guardianship provide substantial evidence that she voluntarily surrendered her parental role and thus "left" K. within the meaning of section 7822. (See *In re Jacqueline H., supra,* 94 Cal.App.3d at p. 816 [mother "left" child when she did not seriously attempt to obtain visitation or a change in the order removing the child from her custody].)

9.

We next address mother's claim that the evidence is insufficient to find that she abandoned K. by failing to provide for or communicate with K. because, according to mother, she was never asked to provide for K. and she visited her as often as she was allowed to by Loretta and Angel.

The failure to support or communicate with K. is presumptive evidence of mother's intent to abandon K. (§ 7822, subd. (b).) Mother admitted that she never provided any support for K., but claims she was not asked to do so. This claim was substantiated by Loretta and Angel. Although the failure to support when a parent does not have the ability to do so or when no demand is made does not, by itself, prove intent to abandon, such failure coupled with failure to communicate may do so. (*Adoption of Allison C., supra,* 164 Cal.App.4th at p. 1013; *In re Randi D.* (1989) 209 Cal.App.3d 624, 630.)

Mother also admitted that she had only seen K. maybe "one or two" times during the first eight months of 2012, but that any further efforts on her part were thwarted by Loretta and Angel. Loretta testified that mother saw K. only once in the first eight months of 2012. Both Loretta and Angel testified that they never restricted mother's visits with K., other than to ask that she call before coming over. The family court could credit the testimony of Loretta and Angel.

Abandonment and intent are questions of fact for the family court, which the family court resolved adversely to mother's position. (*Adoption of Allison C., supra,* 164 Cal.App.4th at p. 1011.) Mother essentially asks this court to reweigh the evidence and substitute our deductions for those of the family court. This we may not do. The credibility of witnesses and the probative value of their testimony are questions for the trier of fact. The power to weigh the evidence and resolve issues of credibility is vested in the trial court and not the reviewing court. (*Jamison v. Jamison* (2008) 164 Cal.App.4th 714, 719.)

Mother has failed to meet her burden of establishing that the family court's findings and orders were not supported by substantial evidence. (*Adoption of Allison C., supra,* 164 Cal.App.4th at p. 1011.) When the family court's findings on intent and abandonment are supported by substantial evidence, they will not be disturbed on appeal. (*In re Brittany H.* (1988) 198 Cal.App.3d 533, 549.)

II. BEST INTERESTS OF THE CHILD

Mother contends that, in the absence of the appointment of counsel for K. and the failure of the investigator to ascertain whether K.'s best interests would be served by adoption, the family court lacked sufficient evidence upon which to determine adoption would be in K.'s best interest. We find no prejudicial error and disagree.

At no point before or during trial did counsel for mother raise concerns about the family court's failure to appoint counsel for K. At a pre-trial hearing on October 30, 2012, Loretta asked if the family court could appoint counsel for K. The family court did not respond to this request.

Section 7861 provides, "[t]he court shall consider whether the interests of the child require the appointment of counsel. If the court finds that the interests of the child require representation by counsel, the court shall appoint counsel to represent the child, whether or not the child is able to afford counsel." Construing the statutory predecessor to section 7861, the California Supreme Court held that the court is required to appoint counsel for the minor unless there is an affirmative showing that the minor's interests would otherwise be protected. (*In re Richard E.* (1978) 21 Cal.3d 349, 354.) Nevertheless, "'failure to appoint counsel for a minor in a freedom from parental custody and control proceeding does not require reversal of the judgment in the absence of miscarriage of justice.'" (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1378.)

Mother claims that the failure to appoint counsel for K. was prejudicial because K. spent the first two years of her six years in mother's custody and care and mother had a continuing presence in her life. According to mother, counsel was necessary to protect

11.

K.'s interests in that continued relationship. But mother's assertions that she continued to have a substantial presence in K.'s life are not borne out by the evidence and mother cannot point to any other interests of K.'s that were not adequately represented at the hearing.

We also find mother's claim that the investigative report was inadequate unavailing. Pursuant to section 7851, subdivision (a), the investigator must provide the court "a written report of the investigation with a recommendation of the proper disposition to be made in the proceeding in the best interest of the child." The report is required to include the following information regarding the child:

> "(1) A statement that the person making the report explained to the child the nature of the proceeding to end parental custody and control. [¶] (2) A statement of the child's feelings and thoughts concerning the pending proceeding. [¶] (3) A statement of the child's attitude towards the child's parent or parents and particularly whether or not the child would prefer living with his or her parent or parents. [¶] (4) A statement that the child was informed of the child's right to attend the hearing on the petition and the child's feelings concerning attending the hearing." (§ 7851, subd. (b).)

"If the age, or the physical, emotional, or other condition of the child precludes the child's meaningful response to the explanations, inquiries, and information required … , a description of the condition shall satisfy the requirement …." (§ 7851, subd. (c).) This section requires the court to "receive the report in evidence" and to "read and consider its contents in rendering the court's judgment." (§ 7851, subd. (d).)

Mother has forfeited her right to complain of inadequacies in the report by failing to object at trial. (*In re Noreen G., supra,* 181 Cal.App.4th at p. 1379; *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) But in any event, we find the investigator's report here plainly complied with subdivisions (b) and (c) of section 7851, and reject mother's claim to the contrary. The December 10, 2012, investigator's report stated that K. remembered her mother by name, but did not remember when she last saw her. She was too young to understand the purpose of an adoption or the meaning of the court proceedings. K.

12.

seemed comfortable living with Loretta and Angel and called them "momma" and "poppa."

As previously noted, the purpose of proceedings to have a child declared free from a parent's custody and control is to promote the child's best interest by providing the stability and security of an adoptive home. (§7800, et seq.; *Adoption of Allison C., supra,* 164 Cal.App.4th at pp. 1009-1010.) Throughout K.'s life, mother did not seek to take parental responsibility for K.'s care or try to develop a parental relationship with her, choosing instead to allow Loretta and Angel assume that role. Once the guardianship was established, mother took none or only token steps in the following three years in an effort to be a part of K.'s life. On the other hand, Loretta and Angel had been a constant in K.'s life since she was two years old.

"[A]n important element that a trial court must consider, when making a decision about children, is the impact of the passage of time. Childhood is short; many basic attitudes and capacities are developed in the very early years. Ties are formed to the adults present in the child's life, and can only be broken by inviting emotional disaster." (*In re Rose G.*, *supra,* (1976) 57 Cal.App.3d at p. 425.) "[A] child's need for a permanent and stable home cannot be postponed for an indefinite period merely because the absent parent may envision renewing contact with the child sometime in the distant future." (*In re Daniel M.* (1993) 16 Cal.App.4th 878, 884; see also *Adoption of Allison C., supra,* 164 Cal.App.4th at p. 1016.) K. deserves the security and stability of a permanent home. Substantial evidence supports the court's finding it was in K.'s best interests to be adopted and we reject mother's claim to the contrary.

III. ICWA APPLICABILITY

Finally, mother contends that, at the January 15, 2013, hearing on the section 7822 petition, the family court failed to inquire of the parties, pursuant to the ICWA, whether K. had any Indian ancestry. We agree.

13.

The ICWA provides that when a child subject to a dependency proceeding is or may be of Native American heritage (referred to in the ICWA as an "Indian child") each tribe of which the child may be a member or eligible for membership must be notified of the dependency proceeding and of the tribe's right to intervene in the proceeding. (25 U.S.C., § 1912(a).) ICWA inquiry and notice requirements apply in a section 7822 proceeding. (*In re Suzanna L.* (2002) 104 Cal.App.4th 223, 226-227.) The necessity for ICWA notice is implicated where there is information the child may have Indian heritage and therefore may be an Indian child, a matter for the ultimate decision of the tribe. (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 848.)

Here, the petition for guardianship filed by Loretta in February of 2009 included form GC-210(CA) Guardianship Petition - Child Information Attachment, on which Loretta had checked the box that she had reason to know that K. might have Indian heritage. The necessary notice form, Notice of Child Custody Proceeding for Indian Child, Form ICWA-030, was apparently completed and sent. But there is nothing further in the record before us to indicate what transpired concerning this issue.[5]

On the Adoption Request, ADOPT-200, filed June 9, 2011, Loretta and Angel checked the box that stated that K. did **not** have any Indian ancestry. At the subsequent hearing on the petition to declare K. free from parental custody on January 15, 2013, no mention was made of the ICWA.

What likely happened is that ICWA notice in the guardianship proceeding revealed that K. did not have any Indian ancestry, which is evidenced by Loretta's

---

[5]    Mother's requests that we take judicial notice of the Indian-child notice which was filed in the guardianship proceeding in order to establish that notice was not properly made in compliance with ICWA. Mother claims that only one of the three federally recognized Cherokee tribes was noticed. While this challenge to the guardianship may have had merit, it is not an issue before this Court in the appeal from the judgment terminating mother's parental rights. We therefore deny her request for judicial notice.

14.

statement to that effect in the adoption request. But because we cannot say with certainty from this silent record in the section 7822 proceeding that the notice requirements of the ICWA were satisfied, we will reverse and remand for the sole purpose of ensuring ICWA compliance. (*In re J.T.* (2007) 154 Cal.App.4th 986, 991; *In re Nikki R., supra,* 106 Cal.App.4th at p. 849.)

## DISPOSITION

The order declaring K. free from mother's custody and control is reversed and the matter remanded to the family court for the sole purpose of ensuring compliance with the ICWA. The family court shall make proper inquiry, and comply with the notice provisions of the ICWA. If, after proper inquiry and notice, the family court determines K. is an Indian child, the family court shall proceed pursuant to the terms of the ICWA. If the family court determines the ICWA does not apply, the order declaring K. free from mother's custody and control shall be reinstated.

The parties are to bear their own costs on appeal.

15.